# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# ODES UTVs

**Reg. No. 4,167,344**
**Registered July 3, 2012**

ODES UTVS (CALIFORNIA LIMITED LIABILITY COMPANY)
1310 JOHNSON DRIVE
CITY OF INDUSTRY, CA 91745

**Int. Cl.: 35**

FOR: RETAIL STORE AND ON-LINE RETAIL STORE SERVICES FEATURING POWERSPORT VEHICLES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

**SERVICE MARK**

FIRST USE 7-1-2011; IN COMMERCE 7-1-2011.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "UTVS", APART FROM THE MARK AS SHOWN.

SER. NO. 85-461,619, FILED 11-1-2011.

MEGHAN REINHART, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# VI-LOCK

**Reg. No. 5,183,399**

**Registered Apr. 11, 2017**

**Int. Cl.: 12**

**Trademark**

**Principal Register**

ODES UTVS LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
1815 Rustin Avenue
Riverside, CA 92507

CLASS 12: Suspension systems for automobiles; Automobiles; Motor vehicles, namely, automobiles, trucks, vans, sport utility vehicles and structural parts therefor

FIRST USE 1-31-2016; IN COMMERCE 1-31-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-045,873, FILED 05-21-2016
BRIDGETT G SMITH, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**Reg. No. 5,183,400**

**Registered Apr. 11, 2017**

**Int. Cl.: 12**

**Trademark**

**Principal Register**

ODES UTVS LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
1815 Rustin Avenue
Riverside, CA 92507

CLASS 12: Suspension systems for automobiles; Automobiles; Motor vehicles, namely, automobiles, trucks, vans, sport utility vehicles and structural parts therefor

FIRST USE 1-31-2016; IN COMMERCE 1-31-2016

The mark consists of a solid border around the literal elements, "VI" and another set of literal elements to the right of those, "LOCK" The two sets are separated by a hyphen in the middle.

SER. NO. 87-045,875, FILED 05-21-2016
BRIDGETT G SMITH, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# DOMINATOR X

**Reg. No. 5,199,643**

**Registered May 09, 2017**

**Int. Cl.: 12**

**Trademark**

**Principal Register**

ODES UTVS LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
1815 RUSTIN AVENUE
RIVERSIDE, CA 92507

CLASS 12: All terrain vehicles; utility terrain vehicles

FIRST USE 10-3-2011; IN COMMERCE 10-3-2011

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-193,188, FILED 10-05-2016
SETH WILLIG CHADAB, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office

# ODES

**Reg. No. 5,391,373**

**Registered Jan. 30, 2018**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

ODES UTVS LLC (TEXAS LIMITED LIABILITY COMPANY)
2007 Royal Lane, Ste 100a
Dallas, TEXAS 752293263

CLASS 35: On-line retail store services featuring off-road vehicles and vehicle parts

FIRST USE 10-1-2011; IN COMMERCE 10-1-2011

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 4167344

SER. NO. 87-519,032, FILED 07-07-2017



*Joseph Matal*

Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# ZEUS TOUCH

**Reg. No. 5,439,000**

**Registered Apr. 03, 2018**

**Int. Cl.: 9**

**Trademark**

**Principal Register**

ODES UTVS LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
1815 Rustin Avenue
Riverside, CALIFORNIA 92507

CLASS 9: Dashboard accessories, namely, LCD monitors that can be mounted on the dashboard of vehicles

FIRST USE 9-15-2017; IN COMMERCE 9-15-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "TOUCH"

SER. NO. 87-142,395, FILED 08-18-2016



Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# RAVAGER

**Reg. No. 5,493,676**

**Registered Jun. 12, 2018**

**Int. Cl.: 12**

**Trademark**

**Principal Register**

ODES UTVS LLC  (TEXAS LIMITED LIABILITY COMPANY)
Ste 100a
2007 Royal Ln
Dallas, TEXAS 752293263

CLASS 12: Off road and On road UTVs

FIRST USE 9-15-2017; IN COMMERCE 9-15-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-485,556, FILED 06-13-2017



Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# ODES INDUSTRIES

**Reg. No. 5,493,864**

**Registered Jun. 12, 2018**

**Int. Cl.: 12**

**Trademark**

**Principal Register**

ODES UTVS LLC  (TEXAS LIMITED LIABILITY COMPANY)
Ste 100a
2007 Royal Ln,
Dallas, TEXAS 75229

CLASS 12: Automobiles; Land vehicles; Utility terrain vehicles (UTVs)

FIRST USE 9-15-2017; IN COMMERCE 9-15-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 4167344

No claim is made to the exclusive right to use the following apart from the mark as shown: "INDUSTRIES"

SER. NO. 87-578,329, FILED 08-22-2017

Director of the United States
Patent and Trademark Office

Case 6:16-cv-01800-Document Filed 06/13/20 Page 17 of 57 Page ID 46

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# TRADEMARK ASSIGNMENT COVER SHEET

Electronic Version v1.1                                                      ETAS ID: TM622586
Stylesheet Version v1.2

| SUBMISSION TYPE: | RESUBMISSION |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT OF THE ENTIRE INTEREST AND THE GOODWILL |
| RESUBMIT DOCUMENT ID: | 900582878 |

## CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| ODES Industries LLC | FORMERLY ODES UTVs LLC | 03/09/2020 | Limited Liability Company: TEXAS |

## RECEIVING PARTY DATA

| | |
|---|---|
| Name: | MASSIMO MOTOR SPORTS LLC |
| Street Address: | 3101 West Miller Road |
| City: | Garland |
| State/Country: | TEXAS |
| Postal Code: | 75041 |
| Entity Type: | Limited Liability Company: TEXAS |

## PROPERTY NUMBERS Total: 10

| Property Type | Number | Word Mark |
|---|---|---|
| Serial Number: | 85461619 | ODES UTVS |
| Serial Number: | 87578112 | ODES POWER |
| Serial Number: | 87519032 | ODES |
| Serial Number: | 87578329 | ODES INDUSTRIES |
| Registration Number: | 4293634 | HUNTERS EDITION |
| Serial Number: | 87045875 | VI-LOCK |
| Serial Number: | 87485556 | RAVAGER |
| Serial Number: | 87045873 | VI-LOCK |
| Serial Number: | 87193188 | DOMINATOR X |
| Serial Number: | 87142395 | ZEUS TOUCH |

OP  $100.00  85461619

## CORRESPONDENCE DATA

**Fax Number:**
*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 4692600589 |
| Email: | shirley.zhao@massimomotor.com |
| Correspondent Name: | Shirley Zhao |
| Address Line 1: | 3101 West Miller Road |

**TRADEMARK**
**REEL: 007159 FRAME: 0001**

| | |
|---|---|
| **Address Line 4:** | Garland, TEXAS 75041 |
| **NAME OF SUBMITTER:** | Shirley Zhao |
| **SIGNATURE:** | /Shirley Zhao/ |
| **DATE SIGNED:** | 01/27/2021 |

**Total Attachments: 38**
source=Asset Purchase Agreement#page1.tif
source=Asset Purchase Agreement#page2.tif
source=Asset Purchase Agreement#page3.tif
source=Asset Purchase Agreement#page4.tif
source=Asset Purchase Agreement#page5.tif
source=Asset Purchase Agreement#page6.tif
source=Asset Purchase Agreement#page7.tif
source=Asset Purchase Agreement#page8.tif
source=Asset Purchase Agreement#page9.tif
source=Asset Purchase Agreement#page10.tif
source=Asset Purchase Agreement#page11.tif
source=Asset Purchase Agreement#page12.tif
source=Asset Purchase Agreement#page13.tif
source=Asset Purchase Agreement#page14.tif
source=Asset Purchase Agreement#page15.tif
source=Asset Purchase Agreement#page16.tif
source=Asset Purchase Agreement#page17.tif
source=Asset Purchase Agreement#page18.tif
source=Asset Purchase Agreement#page19.tif
source=Asset Purchase Agreement#page20.tif
source=Asset Purchase Agreement#page21.tif
source=Asset Purchase Agreement#page22.tif
source=Asset Purchase Agreement#page23.tif
source=Asset Purchase Agreement#page24.tif
source=Asset Purchase Agreement#page25.tif
source=Asset Purchase Agreement#page26.tif
source=Asset Purchase Agreement#page27.tif
source=Asset Purchase Agreement#page28.tif
source=Asset Purchase Agreement#page29.tif
source=69 Order[63]#page1.tif
source=69 Order[63]#page2.tif
source=69 Order[63]#page3.tif
source=69 Order[63]#page4.tif
source=Conversion#page1.tif
source=Conversion#page2.tif
source=Conversion#page3.tif
source=Conversion#page4.tif
source=Amendment Filing (name change)#page1.tif

ASSET PURCHASE AGREEMENT
BY AND BETWEEN
ODES INDUSTRIES, LLC

AND
MASSIMO MOTOR SPORTS, INC,

48460065;2

TRADEMARK
REEL: 007159 FRAME: 0003

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is made and entered into as of February ___, 2020 by and between Odes Industries, LLC, a Texas limited liability company (the "Seller"), Massimo Motor Sports, LLC a Texas limited liability company (the "Purchaser"). Purchaser and Seller are collectively referred to herein as the "Parties" and each is a "Party". Unless otherwise indicated, initially capitalized terms used herein are defined in Section 9.1.

WHEREAS, the Seller produces and distributes all terrain vehicles under the Odes brand; licenses the production, sale and distribution of Odes vehicles (the "Business");

WHEREAS, the Seller filed a chapter 11 petition on August 31, 2019 (the "Petition Date") commencing Case No. 19-43582-11 (the "Chapter 11 Case") before the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, (the "Bankruptcy Court"); and

WHEREAS, the Purchaser desires to purchase, and the Seller desires the Purchaser to purchase, the Seller's assets related to its production, distribution and licensing of the production & distribution of Odes vehicles and as a result substantially all business assets located at the Seller's facility located at 2324 Loop 820 N, Fort Worth, Texas 76118.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements made herein, and of the mutual benefit derived hereby, the Parties, intending to be legally bound, agree as follows:

### ARTICLE 1
### PURCHASE AND SALE OF ASSETS

**1.1**      **Asset Purchase Transaction.**

     1.1.1   Purchase of Assets. Subject to the terms and conditions hereof, Seller will sell, convey, assign, transfer and deliver to Purchaser at the Closing, and Purchaser will purchase and accept at the Closing, all assets, properties, privileges, rights, interests, business and goodwill belonging to Seller or any subsidiary or affiliate of Seller (except the Excluded Assets, as hereinafter defined), used or held for use in connection with the operations of the Business, of every kind and description, real, personal and mixed, tangible and intangible and wherever located (such assets, properties, privileges, rights, interests, business and goodwill being transferred hereunder are hereinafter referred to collectively as the "Purchased Assets") representing substantially all of the Seller's assets, free and clear of all liens, mortgages, charges, security interests, pledges, transfer restrictions, voting agreements, voting trusts, and other encumbrances, restrictions and claims of any nature (collectively, "Encumbrances"). In exchange for the purchase and sale of the Purchased Assets, the Purchaser shall pay to Seller at the Closing the Purchase Price, in accordance with the terms of this Article 1.

     (a)     Inventories. All of the Seller's inventories and supplies with respect to the Business (collectively, the "Inventory");

     (b)     Machinery, Equipment and Other Personal Property. All machinery, equipment, computers, furniture, tools and other fixed assets and goods owned by

1

48460065;2

TRADEMARK
REEL: 007159 FRAME: 0004

Seller as of the date of this Agreement, including, without limitation, the material items of tangible personal property listed on <u>Schedule A, §1.1.1.(b)</u> attached hereto, and any additions, improvements, replacements and alterations thereto made between the date of this Agreement and the Closing Date; each of which is

        (c)    <u>Contracts</u>. Those Contracts (as hereinafter defined) made solely in connection with the Business and operations of the Business and listed in **Error! Reference source not found.**. Notwithstanding the immediately preceding sentence, however, the Assets shall not include (A) any Contract that expires or is terminated prior to the Closing Date; and (B) any Rejected Contract. As used in this Agreement, "Contract" means any unexpired agreement, license, lease for real property or personal property permit, arrangement, commitment, understanding or contract, whether written or oral, expressed or implied, contingent, fixed or otherwise, to which the Business (or Seller with respect to the Business) is a party or is bound, but the term "Contract" does not include any receivable retained by Seller or any Claim (each as hereinafter defined), any contract of insurance, any employee benefit plan or any collective bargaining agreement;

        (d)    <u>Intellectual Property and Other Intangible Property Rights</u>. All, whether foreign or domestic: (i) copyrights, trademarks, service marks, trade names and patents (registered and unregistered), and applications therefor; (ii) all domain, platforms, accounts or the like related to Seller's identity, social media, existence or presence on the internet or in cyberspace; and (iii) all logos, artwork, recipes, trade secrets and secret processes, governmental authorizations, permits and licenses with respect to intangible property rights, franchises, fictitious name and similar filings, computer programs and program rights, and other intangible property rights, including, without limitation,: (A) those items listed on <u>Schedule A, §1.1.1(d)</u>; (B) all of Seller's right to use the name of the Business, (C) any such rights acquired by Seller in connection with the Business between the date hereof and the Closing Date; and (D) any usernames, passwords, registration keys or similar requirements for access or use thereof (all such intangible property rights being hereinafter referred to collectively as the "Intellectual Property");

        (e)    <u>Other Files and Records</u>. All other files and records of Seller relating to the Business and operations of the Business, other than duplicates of such files and records retained by Seller (collectively, the "Duplicate Records");

        (f)    <u>Goodwill</u>. All of Seller's goodwill in, and the going concern value of, the Purchased Assets and the Business; and

        (g)    <u>Prepaid Items</u>. The items of prepaid expense listed in the Assignment and Assumption Agreement (collectively, the "Purchased Prepaid Items").

        1.1.2    <u>Excluded Assets</u>. Notwithstanding the foregoing and for the avoidance of doubt, the assets retained by Seller and not sold hereunder, include without limitation: (i) any cash or checking accounts of the Seller, (ii) the corporate charter, qualifications to conduct business as a foreign corporation, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, partnership minute books, partnership transfer books or any other documents relating to the organization, maintenance and existence of the Seller as a limited liability company, (iii) any rights of the Seller under this Agreement or any other agreement

2

**TRADEMARK**
**REEL: 007159 FRAME: 0005**

between the Seller, on the one hand, and the Purchaser, on the other hand, except as specifically provided for herein; (iv) any Rejected Contract; (v) any claim or cause of action, including all claims arising under Sections 544 through 550 of the Bankruptcy Code; and (vi) any rights to inventory held by another parties specifically any inventory held by SMG Global, Inc., (the "Excluded Assets").

**1.2    The Purchase Price**.

1.2.1    Cash Purchase Price. The aggregate cash purchase price for the Purchased Assets (the "Purchase Price") will be Five Hundred Thousand Dollars ($500,000.00), payable in cash at Closing.

1.2.2    Allocation of Purchase Price. The Parties agree to allocate the Purchase Price among the Purchased Assets in accordance with an allocation schedule to be prepared in accordance with Section 1060 of the Code. The Seller and the Purchaser shall confer and mutually agree upon such allocation schedule. In connection with the determination of such **Error! Reference source not found.**, the Parties shall cooperate with each other and provide such information as any of them shall reasonably request. The Parties will each report the federal, state and local and other Tax consequences of the purchase and sale contemplated hereby (including the filing of Internal Revenue Service Form 8594) in a manner consistent with such allocation.

## ARTICLE 2
## THE CLOSING

**2.1    The Closing**. The closing of the transaction contemplated hereby (the "Closing") shall take place at the offices of Eric Liepins PC, 12770 Coit Road, Suite 1100, Dallas, Texas 75251, or at such other place as may be mutually agreeable to each of the Parties, at 10:00 a.m., local time, on the date that is three (3) business days after the conditions to Closing set forth in Article 4 have been satisfied or waived, or at such other place or on such other date as may be mutually agreeable to the Parties (the "Closing Date"). The Closing shall be effective as of 12:01 a.m. of the Closing Date.

**2.2    Deliveries at the Closing**.

2.2.1    At the Closing, the Seller shall deliver to the Purchaser, upon receipt of the Purchase Price,   .

(a)    all documents, certificates and agreements reasonably necessary to transfer to the Purchaser, as of Closing Date, Seller's title to the Purchased Assets, free and clear of any and all Encumbrances thereon other than Permitted Encumbrances;

(b)    the Sale Order;

(c)    an executed original of the Assignment and Assumption Agreement;

(d)    all consents necessary to satisfy any applicable restrictions on the assignment of a Material Contract.

48460065;2

3

TRADEMARK
REEL: 007159 FRAME: 0006

2.2.2   On the Closing Date, the Purchaser shall deliver to the Seller

(a)   the Purchase Price in immediately available funds, to the account(s) designated by the Seller at least one business day prior to the Closing; and

(b)   a copy of the resolutions of the Purchaser's Managers, or similar enabling document authorizing the execution delivery and performance hereof by the Purchaser.

## ARTICLE 3
## SELLER'S REPRESENTATIONS AND WARRANTIES

**Representations and Warranties of the Seller**. The Seller hereby represents and warrants to the Purchaser as of the date hereof and (except for changes contemplated herein) as of the Closing Date as follows:

**3.1**      **Organization and Power**. The Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas. Seller is a member-managed company and Michael Smith is its sole manager (the "Manager"). Seller has no subsidiaries. Each of the Seller and the Manager has all requisite company power and authority, as the case may be, to own its properties, to carry on its business as presently conducted, to enter into and perform this Agreement and the agreements, documents and instruments contemplated hereby (collectively, the "Transaction Documents"), to which it is a party and to carry out the transactions contemplated hereby and thereby. Each of the Seller, the Manager is duly licensed or qualified to do business as a foreign business entity in each jurisdiction wherein the character of its property, or the nature of the activities presently conducted by it, makes such qualification necessary. Seller is not in violation of any term or provision of its certificate of formation (the "Certificate") or other governing documentation, as in effect as of this date.

**3.2**      **Authorization, etc**. Subject to the entry by the Clerk of the Bankruptcy Court of the Sale Order, the Seller has the requisite corporate power and authority to execute and deliver this Agreement and the other Transaction Documents, to perform fully its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. Subject to the entry by the Clerk of the Bankruptcy Court of the Sale Order, this Agreement and the other Transaction Documents are legal, valid and binding obligations of the Seller, enforceable against it in accordance with its terms, except as such enforceability may be limited by (a) applicable insolvency, bankruptcy, reorganization, moratorium or other similar laws affecting creditors' rights generally and (b) applicable equitable principles (whether considered in a proceeding at law or in equity).

**3.3**      **No Conflicts, etc**. Subject to the entry by the Clerk of the Bankruptcy Court of the Sale Order, the execution, delivery and performance by the Seller under this Agreement and the other Transaction Documents, and the consummation of the transactions contemplated hereby and thereby, do not and will not conflict with or result in a violation of or a default under (with or without the giving of notice or the lapse of time or both) (a) any Applicable Law applicable to the Seller or the Purchased Assets, (b) Seller's Certificate or other organizational documents, or (c) hereto, any material Contract to which the Seller is a party or is bound.

48460065;2

**TRADEMARK**
**REEL: 007159 FRAME: 0007**

3.4    **Litigation**. Except for the Chapter 11 Case, there is no action, claim, suit, or proceeding pending, or to the Seller's Knowledge threatened, against or relating to Seller or the Business.

3.5    **Purchased Assets**. The Seller has good title to the Purchased Assets, free and clear of any and all Encumbrances.

3.6    **Material Contracts**. **Error! Reference source not found.** hereto lists all of Seller's written contracts (collectively, the "Material Contracts") relating to the Business. Except as set forth in the **Error! Reference source not found.**, no consent of any third party is required under any Material Contract as a result of or in connection with, and the enforceability of any Material Contract will not be affected in any manner by, the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby.

3.7    **Real Property**. Seller does not own any real property. Seller rejected any and all real property leases in the Chapter 11 Case.

3.8    **Employees Labor Matters, etc.** Seller is not a party to or bound by any collective bargaining agreement and there are no labor unions or other organizations representing or purporting to represent any employees employed in the operation of the Business. **Error! Reference source not found.** hereto lists all of the Seller's current employees and their respective date of hire.

3.9    **Brokers, Finders. etc.** Negotiations relating to this Agreement and the transactions contemplated hereby have been carried on without the participation of any Person acting on behalf of the Seller in such manner as to give rise to any valid claim against the Purchaser for any brokerage or finder's commission, fee or similar compensation.

3.10    **Tax Matters**. (a) The Seller has filed all Tax Returns and tax reports required to be filed by it (subject to available extensions), including, without limitation, those returns and reports pertaining to federal, state, local, foreign or other income taxes, gross receipt taxes, ad valorem taxes, transfer taxes, excise taxes, sales and use taxes, payroll taxes, withholding taxes, occupation taxes, property taxes and franchise taxes, and all Taxes shown or claimed to be due thereon have been paid. There are no liens for Taxes (other than for current real and personal property taxes not yet due and payable) on the Purchased Assets or with respect to the Business. All Taxes and other assessments and levies which the Seller is required by law to withhold or collect have been duly withheld and collected and have been paid over to the proper governmental authorities or held by the Seller for such payment.

**ARTICLE 4**
**PURCHASER'S REPRESENTATIONS AND WARRANTIES**

The Purchaser represents and warrants to the Seller as of the date hereof and as of the Closing Date as follows:

4.1    **Purchaser Entity Status**. The Purchaser is a limited liability corporation duly organized, validly existing and in good standing under the laws of the State of Texas.

48460065;2

5

**TRADEMARK**

**4.2    Authorization, etc**. The Purchaser has the corporate power and authority to execute and deliver this Agreement, to perform fully its obligations hereunder, and to consummate the transactions contemplated hereby. The execution and delivery by the Purchaser of this Agreement, and the consummation of the transactions contemplated hereby, have been duly authorized by all requisite corporate action of the Purchaser. Subject to the entry by the Clerk of the Bankruptcy Court of the Sale Order, this Agreement is a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its respective terms, except as such enforceability may be limited by (a) applicable insolvency, bankruptcy, reorganization, moratorium or other similar laws affecting creditors' rights generally and (b) applicable equitable principles (whether considered in a proceeding at law or in equity).

**4.3    No Conflicts, etc**. The execution, delivery and performance by the Purchaser of this Agreement, and the consummation of the transaction contemplated hereby, do not and will not conflict with or result in a violation of or a default under (with or without the giving of notice or the lapse of time or both) (a) any Applicable Law applicable to the Purchaser, (b) the certificate of incorporation or by-laws or other organizational documents of the Purchaser or (c) any material contract, agreement or other instrument to which the Purchaser is a party or by which the Purchaser is bound.

**4.4    Litigation**. There is no Action, pending, or to the Purchaser's Knowledge threatened, against or relating to the Purchaser or against or relating to the transaction contemplated by this Agreement.

**4.5    Available Funds**. The Purchaser has, or will have on the Closing Date, sufficient funds available to consummate this Agreement in accordance with its terms and otherwise has the wherewithal to satisfy its post-Closing obligations hereunder.

**4.6    Due Diligence**. Prior to the date hereof, the Purchaser has made and conducted a reasonable investigation of the Seller, including the Purchased Assets. The Purchaser is entering into this transaction based on such investigation and, except for the specific representations and warranties made by the Seller in Article 3, is not relying upon any representation or warranty of the Seller its Manager, employees, agent or advisor of any of them, nor upon the accuracy of any record, projection or statement made available or given to the Seller in the performance of such investigation.

**4.7    Brokers, Finders, etc**. All negotiations relating to this Agreement and the transaction contemplated hereby, have been carried on without the participation of any Person acting on behalf of the Purchaser in such manner as to give rise to any valid claim against the Seller for any brokerage or finder's commission, fee or similar compensation.

**4.8    No Knowledge of Misrepresentations or Omissions**. The Purchaser has no knowledge that any representation or warranty of the Seller in this Agreement or the Schedules hereto is not true and correct in all material respects and the Purchaser has no knowledge of any material errors in, or material omissions from, the Schedules to this Agreement.

**TRADEMARK**
**REEL: 007159 FRAME: 0009**

## ARTICLE 5
## CONDITIONS PRECEDENT TO THE ASSET PURCHASE TRANSACTION

**5.1**   **Conditions to Obligations of Each Party**. The obligations of the Parties to consummate the transaction contemplated hereby shall be subject to the fulfillment on or prior to the Closing Date of the following conditions:

**5.1.1**   No Injunction, etc. Consummation of the transactions contemplated hereby shall not have been restrained, enjoined or otherwise prohibited by any order, injunction, decree or judgment of any court or other governmental authority for a period exceeding 15 days, and the Sale Order, as hereafter defined, shall be in full force and effect.

**5.2**   **Conditions to Obligations of the Purchaser**. The obligations of the Purchaser to consummate the transactions contemplated hereby shall be subject to the fulfillment on or prior to the Closing Date of the following additional conditions provided, however, that to the extent Sections 5.2.2 or Section 5.2.3 are inconsistent with the Bid Procedures, the Bid Procedures shall control.

**5.2.1**   Representations; Covenants. The representations and warranties of the Seller contained in Article 3 of this Agreement shall be true and correct in all material respects at and as of the Closing Date and the Seller shall have duly performed and complied in all material respects with all covenants, agreements and conditions required by this Agreement to be performed or complied with by it prior to or on the Closing Date.

**5.2.2**   Sale Order. The Bankruptcy Court shall have entered an order pursuant to Sections 363 and 365 of the Bankruptcy Code (the "Sale Order") satisfactory to the Purchaser approving the transactions contemplated hereby not later than March 15, 2020.

**5.2.3**   Closing. The Closing of the transactions contemplated by this Agreement shall occur no later than March 15, 2020.

**5.2.4**   Closing Deliverables. The Seller shall have delivered the deliverables required to be provided by Seller pursuant to Section 2.2.

**5.2.5**   No Adverse Change. There shall not have been any materially adverse change in the conditions of the Purchased Assets or the Business since the date upon which this Agreement is executed.

**5.3**   **Conditions to Obligations of the Seller**. The obligation of the Seller to consummate the transactions contemplated hereby shall be subject to the fulfillment, on or prior to the Closing Date, of the following additional conditions:

**5.3.1**   Representations; Covenants. The representations and warranties of the Purchaser contained in Article 4 of this Agreement shall be true and correct in all material respects at and as of the Closing Date and the Purchaser shall have duly performed and complied in all material respects with all agreements and conditions required by this Agreement to be performed or complied with by it prior to or on the Closing Date.

7

TRADEMARK
REEL: 007159 FRAME: 0010

5.3.2   <u>Board Approval</u>. The Purchaser shall have delivered to the Seller certified copies of the resolutions duly adopted by the Purchaser's Managing Member(s) authorizing the execution, delivery and performance of this Agreement and each of the other agreements contemplated hereby.

5.3.3   <u>Closing Deliverables</u>. The Purchaser shall have delivered the Purchase Price and all other deliverables required to be provided by Purchaser pursuant to <u>Section 2.2</u> and the Seller shall have been able to obtain all required third party consents.

5.3.4   <u>Court Order</u>. The Bankruptcy Court shall have entered the Sale Order.

## ARTICLE 6
## OTHER COVENANTS AND AGREEMENTS

**6.1**   **Covenants and Agreements of the Seller**. Following the Closing, the Seller shall from time to time execute and deliver such additional instruments, documents, conveyances or assurances and take such other actions as shall be necessary, or otherwise reasonably requested by the Purchaser, to confirm and assure the rights and obligations provided for in this Agreement and the other Transaction Documents and render effective the consummation of the transactions contemplated hereby and Seller shall provide Purchaser with full access to review books, records, facilities and Purchased Assets relating to the Business prior to the Closing Date.

**6.2**   **Expenses**.

6.2.1   Each of the Seller and the Purchaser will bear their respective obligations and expenses (including legal fees and expenses) incurred in connection with this Agreement or arising as a result of the transaction contemplated hereby.

6.2.2   Any and all transfer, documentary, sales, use, stamp, registration, value-added and other taxes and fees, including any penalties and interest thereon incurred in connection with the execution of this Agreement (if any) shall be paid by the Purchaser when due.

## ARTICLE 7
## TERMINATION

**7.1**   **Ability to Terminate**. Purchase or Seller may terminate this Agreement as provided below:

7.1.1   the Purchaser and the Seller may terminate this Agreement by mutual written consent at any time prior to the Closing;

7.1.2   the Seller may terminate this Agreement by giving written notice to the Purchaser if Purchaser fails to pay the Purchase Price on the Closing Date or any of the conditions set forth in <u>Sections 5.1</u> or <u>5.3</u> shall have become incapable of fulfillment, and shall not have been waived by the Seller (unless the failure results primarily from the Seller breaching or failing to perform any representation, warranty, or covenant contained in this Agreement); and

48460065;2

TRADEMARK
REEL: 007159 FRAME: 0011

7.1.3   the Purchaser may terminate this Agreement by giving written notice to the Seller if any of the conditions set forth in Sections 5.1 or 5.2 shall have become incapable of fulfillment, and shall not have been waived by the Purchaser (unless the failure results primarily from the Purchaser breaching or failing to perform any representation, warranty, or covenant contained in this Agreement).

**7.2**   **Effect of Termination.** In the event of a termination pursuant to either Section 7.1.2 or Section 7.1.3, the non-breaching party shall be entitled to pursue any and all other remedies available at law or in equity.

**7.3**   **Procedure upon Termination.** In the event of termination pursuant to Section 7.1, written notice thereof will be immediately given to the other Party and the transactions contemplated by this Agreement will be terminated, without any further action by any Party, subject to Section 7.2. If the transactions contemplated by this Agreement are terminated as provided herein, each Party will return all documents, work papers and other materials of the other Party, whether obtained prior to or after the execution of this Agreement, to the Party furnishing the same.

### ARTICLE 8
### MISCELLANEOUS

**8.1**   **Survival.** All covenants and agreements contained in Sections 6.1, 6.2, and 8.11 of this Agreement shall survive the Closing Date and the consummation of the transactions contemplated hereby, but all other covenants and agreements and the representations and warranties set forth in this Agreement shall terminate upon the consummation of the transactions contemplated hereby.

**8.2**   **Acknowledgment by the Purchaser.**

8.2.1   The Purchaser has conducted, to its satisfaction, an independent investigation and verification of the financial condition, results of operations, assets, liabilities, properties and projected operations of the Business. In making its determination to proceed with the transactions contemplated by this Agreement, the Purchaser has relied on the results of its own independent investigation and verification and the representations and warranties of the Seller expressly and specifically set forth in this Agreement, including the Schedules attached hereto.

8.2.2   WITHOUT LIMITING THE GENERALITY OF SECTION 8.2.1 OF THIS AGREEMENT, THE PURCHASER ACKNOWLEDGES AND AGREES THAT IT IS NOT RELYING UPON ANY REPRESENTATION OR WARRANTY OF THE SELLER (OTHER THAN AS SET FORTH IN ARTICLE 3) OR ANY REPRESENTATION OR WARRANTY OF THE SELLER'S AFFILIATES, AGENTS OR ADVISORS (INCLUDING, WITHOUT LIMITATION, ANY INFORMATION, PROJECTION OR PROMISE CONTAINED IN ANY MATERIALS DELIVERED BY OR ON BEHALF OF THE SELLER). THE SELLER IS SELLING, AND THE PURCHASER I ACQUIRING, THE PURCHASED ASSETS ON AN "AS IS, WHERE IS" BASIS.

**8.3**   **Severability.** If any covenant, agreement, provision or term of this Agreement is held to be invalid for any reason whatsoever, then such covenant, agreement, provision or term will be deemed severable from the remaining covenants, agreements, provisions and terms of this

48460065;2

**TRADEMARK**
**REEL: 007159 FRAME: 0012**

Agreement and will in no way affect the validity or enforceability of any other provision of this Agreement.

      8.4    **Notices**. All notices, requests, demands, waivers and other communication required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if (i) delivered personally, (ii) sent by registered or certified mail, return receipt requested, postage prepaid or (iii) sent by next-day or overnight mail or delivery to the applicable address set forth below.

If to the Seller:
Odes Industries LLC
2324 Loop 820 N
Fort Worth, Texas 76118
Attention: Mike Smith

Copy to:
Eric A. Liepins, PC
12770 Coit Road, Ste 1100
Dallas, Texas 75251
Fax (972) 991-5788
Attention: Eric A. Liepins

If to Purchaser:
Massimo Motor Sports, LLC
3101 W Miller
Garland, Texas 75042
Attention: Shirley Zhao

or, in each case, at such other address as may be specified in writing to the other Party.

All such notices, requests, demands, waivers and other communications shall be deemed to have been received (i) if by personal delivery, on the date after such delivery, (ii) if by certified or registered mail, on the seventh business day after the mailing thereof or (iii) if by next-day or overnight mail or delivery, on the day delivered provided that an additional copy is also sent by telecopy (with confirmation of receipt).

      8.5    **Entire Agreement.** This Agreement, the Schedules hereto, the Bid Procedures Order, the Sale Order, and any other Transaction Documents contemplated hereby (when executed and delivered) constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof.

      8.6    **Counterparts**. The Parties may execute this Agreement in separate counterparts (no one of which need contain the signatures of both Parties), each of which shall be deemed an original and all of which together will constitute one and the same instrument.

      8.7    **Governing Law. etc**. This Agreement will be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice of law or conflict provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the laws of any jurisdiction other than the State of Texas to be applied. In furtherance of the

48460065;2

TRADEMARK
REEL: 007159 FRAME: 0013

foregoing, the internal law of the State of Texas will control the interpretation and construction of this Agreement, even if under such jurisdiction's choice of law or conflict of law analysis, the substantive law of some other jurisdiction would ordinarily apply.

      **8.8**    **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

      **8.9**    **Assignment.** This Agreement shall not be assignable or otherwise transferable by any Party hereto without the prior written consent of the other Party hereto.

      **8.10**    **No Third Party Beneficiaries.** Nothing in this Agreement shall confer any rights upon any person or entity other than the Parties and their respective successors and permitted assigns.

      **8.11**    **Press Releases and Public Announcements.** No Party shall issue any press release or make any public announcement relating to the subject matter of this Agreement prior to the Closing without the prior written approval of the other Party (such approval not to be unreasonably withheld), except as required by applicable law.

      **8.12**    **Amendment, Waivers, etc.** No amendment, modification or discharge of this Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by the Party against whom enforcement of the amendment, modification, discharge or waiver is sought. Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the rights of the Party granting such waiver in any other respect or at any other time. Neither the waiver by either of the Parties of a breach of or a default under any of the provisions of this Agreement, nor the failure by either of the Parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder, shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder.

      **8.13**    **Captions.** The captions used in this Agreement are for convenience of reference only and do not constitute a part of this Agreement and will not be deemed to limit, characterize or in any way affect the meaning or interpretation of any provision of this Agreement, and all provisions of this Agreement will be enforced and construed as if no caption had been used in this Agreement.

      **8.14**    **No Strict Construction; Interpretation.** The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent and no rule of strict construction will be applied against any Person.

      **8.15**    **Incorporation of Schedules.** The Schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

48460065;2

**TRADEMARK**
**REEL: 007159 FRAME: 0014**

**ARTICLE 9**
**DEFINITIONS**

**9.1** **Definition of Certain Terms.** The terms defined in this <u>Section 9.1</u>, whenever used in this Agreement (including in the Schedules), shall have the respective meanings indicated below for all purposes of this Agreement:

"<u>Action</u>" means any action, suit, arbitration or proceeding by or before an Governmental Authority, whether criminal, civil, regulatory or otherwise.

"<u>Affiliate</u>" of a Person means a Person that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, the first Person. "<u>Control</u>" (including the terms "<u>controlled by</u>" and "<u>under common control with</u>") means the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a person, whether through the ownership of voting securities, by contract or credit arrangement, as trustee or executor, or otherwise.

"<u>Agreement</u>" means this Asset Purchase Agreement, including the Schedules hereto.

"<u>Applicable Law</u>" means all applicable provisions of all (i) constitutions, treaties, statutes, laws (including the common law), rules, regulations, ordinances, codes or orders of any Governmental Authority and (ii) Governmental Approvals.

"Assignment and Assumption Agreement" means that certain Assignment and assumption Agreement, by and between Purchaser and Seller substantially in the form of **Error! Reference source not found.**

"<u>Bankruptcy Code</u>" means Title 11 of the United States Code, as amended.

"<u>Bankruptcy Court</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Bid Procedures Order</u>" means the Order under 11 U.S.C. §§363(b) and 105 Authorizing and Approving (i) Auction Procedures and Notice of Hearing Regarding Sale of Assets, as amended from time to time on or prior to the date of this Agreement.

"<u>Business</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Certificate</u>" has the meaning set forth in <u>Section 3.1</u>.

"<u>Chapter 11 Case</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Closing</u>" has the meaning set forth in <u>Section 2.1</u>.

"<u>Closing Date</u>" has the meaning set forth in <u>Section 2.1</u>.

"<u>Code</u>" means the Internal Revenue Code of 1986, as amended.

48460065;2

**TRADEMARK**
**REEL: 007159 FRAME: 0015**

"Consents" means any consent, approval, authorization, waiver, permit, grant, franchise, concession, agreement, license exemption or order of, registration, certificate, declaration of filing with, or report or notice to, any person, including, but not limited to any Governmental Authority.

"Encumbrances" "has the meaning set forth in Section 1.1.1.

"Excluded Assets" has the meaning set forth in Section 1.1.2.

"Manager" has the meaning set forth in Section 3.1.

"Governmental Approval" means any consent, approval, authorization, waiver, permit, grant, franchise, concession, agreement, license, exemption or order of registration, certificate, declaration or filing with, or report or notice with or to any Governmental Authority.

"Governmental Authority" means any nation or government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, including, without limitation, any governmental authority, agency, department, board, commission or Instrumentality of the United States, any State of the United States or any political subdivision, thereof, and any tribunal or arbitrator(s) of competent jurisdiction, and any self-regulatory organization.

"Known" or "Knowledge" means the actual personal knowledge, without independent investigation, of an individual employed by a Party for whom a significant portion of his or her duties relates to matters as to which the applicable representation or warranty is made hereunder and in the case of Seller shall mean such actual knowledge of Gene Lunceford, Melinda Provence, Gary Anderson or Mike Gavin and in the case of Purchaser shall mean such actual knowledge of Gene Lunceford, Melinda Provence, Gary Anderson or Mike Gavin.

"Material Contracts" has the meaning set forth in Section 3.6.

"Permitted Encumbrances" means (i) liens for taxes, assessments and governmental charges or liens which are either not yet due or being contested in good faith; (ii) deposits, liens or pledges made in connection with, or to secure payment of, performance of bids or trade contracts, surety and appeal bonds, performance bonds, compensation, unemployment insurance, old age pensions or other social security obligations that are not due and payable or which are being contested in appropriate proceedings, (iii) operating leases or purchase money security interests in any property acquired by the Seller in the ordinary course of business; (iv) statutory interests or title of a lessor under any lease disclosed in the schedules to this Agreement; (v) carriers', warehousemen's, statutory mechanics, materialmen's or contractors' liens or encumbrances or any similar statutory lien which is not filed and for which no amounts are past due or in dispute and other like liens arising in the ordinary course of business and securing obligations not yet due and payable; (vi) matters which would be disclosed by an accurate survey of each parcel of real property; (vii) zoning restrictions, easements, rights-of-way, restrictions, licenses, covenants, conditions, rights of way and other similar charges and encumbrances not interfering with the ordinary conduct of the business of the Seller or materially detracting from the value of the Purchased Assets; (viii) liens and mortgages on the Leased Real Property described in Section 3.7 above; (ix) and liens outstanding on the date hereof, the presence of which individually or collectively do not have a material adverse effect on the financial condition of the Seller,

TRADEMARK
REEL: 007159 FRAME: 0016

"Party" has the meaning set forth in the recitals to this Agreement.

"Person" means an individual, a partnership, a corporation, an association, a limited liability company, a joint stock company, a trust, a joint venture, an unincorporated organization and a Governmental Authority.

"Petition Date" has the meaning set forth in the recitals to this Agreement.

"Purchased Assets" has the meaning set forth in Section 1.1.1.

"Purchase Price" has the meaning set forth in Section 1.2.1.

"Purchaser" has the meaning set forth in recitals to this Agreement.

"Reasonable Efforts" means reasonable efforts that are commercially reasonable under the circumstances, excluding the payment of any money or other consideration to any person or entity or the commencement of any litigation, arbitration or other Action.

"Rejected Contract" means any contract that was rejected by Seller in the Chapter 11 Case.

"Sale Order" has the meaning set forth in Section 5.2.2.

"Schedules" means the schedules appended to this Agreement, to be delivered by Seller at or before Closing.

"Seller" has the meaning set forth in the recitals to this Agreement.

"Tax" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, stamp, occupation, franchise, withholding, social security, unemployment, disability, real property, personal property, sales, use or transfer tax, value added tax, including any interest, penalty, or addition thereto, whether disputed or not.

"Tax Return" means any return, report, declaration, form, claim for refund or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Transaction Documents" has the meaning set forth in Section 3.1.

**9.2      Other Definitional Provisions.**

9.2.1      Certain Terms. The terms "hereof," "herein" and "hereunder" and terms of similar import are references to this Agreement as a whole and not to any particular provision of this Agreement. The term "including" as used in this Agreement is used to list items by way of example and shall not be deemed to constitute a limitation of any term or provision contained herein. As used in this Agreement, the singular or plural number shall be deemed to include the other whenever the context so requires. Section, paragraph, clause, Exhibit and Schedule references contained in this Agreement are references to sections, clauses and schedules in or to this Agreement, unless otherwise specified.

14

48460065;2

TRADEMARK
REEL: 007159 FRAME: 0017

9.2.2   Laws. Any references to any federal, state, local or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. Any reference to any particular law or regulation will be interpreted to include any revision of or successor to such law or regulation regardless of how it is numbered or classified.

*     *     *     *

**TRADEMARK**
**REEL: 007159 FRAME: 0018**

IN WITNESS WHEREOF, the Parties have duly executed this Asset Purchase Agreement as of the date first above written.

**SELLER**
ODES INDUSTIES, LLC

By:

Michael Smith, Manager

**PURCHASER**
MASSIMO MOTOR SPORTS, LLC
By:

David Shan, Manager

48460065;2

**TRADEMARK**
**REEL: 007159 FRAME: 0019**

## SCHEDULE A

**Assets**

48460065;2



Massimo Motor Sports, LLC.
3101 W Miller Road
Garland, TX 75041
Phone: (877) 881-6376
Email: info@massimomotor.com
Website: www.massimomotor.com

**December 19, 2019**

**To Whom It May Concern:**

Massimo Motor Sports, LLC would like to enter a bid for all company assets in the Asset Sheet List 2019 (see attached), Patents and Trademarks shown below for $500,000.

**Patent:**

US D788,653 – Suspension System

US D682,750 – Winch With Hitch Mount

MS130814 – Dual Fan Radiator System

D691,924 – Vehicle Cab Enclosure

Trademarks: 87045875,85461619, 85561334, 87578329, 87485556, 87045873, 87193188, 87519032, 87142395.

David Shan

*CEO of Massimo Motor Sports, LLC*

*david@massimomtor.com*

# Odes - Massamo"s Offer

| Name | QTY | Price | Total |
|---|---|---|---|
| Bolt Cutter | 1 | 24.75 | 24.75 |
| Skill Saw | 1 | 100 | 100 |
| Hammer Drill | 1 | 100 | 100 |
| Extension Cords | 3 | 35 | 105 |
| Aluminum Ladder | 1 | 181.02 | 181.02 |
| Floor Scale | 1 | 390 | 390 |
| Tool Boxes w/ Tools | 2 | 470 | 940 |
| Safety Glasses | 4 | 6 | 24 |
| Dewalt Saw | 1 | 155 | 155 |
| Hog Pliers | 1 | 9.71 | 9.71 |
| Dock Door Locks | 1 | 51.78 | 51.78 |
| Ratchet | 1 | 9.51 | 9.51 |
| Dewalt drill | 8 | 180.22 | 1441.76 |
| Fridge in Warehouse White | 2 | 75 | 150 |
| Dock Plate | 0 | 847.25 | 0 |
| Time Clock | 1 | 199 | 199 |
| SM Black Rack | 1 | 16.12 | 16.12 |
| Power strips | 1 | 41.65 | 41.65 |
| Time Clock | 1 | 299.95 | 299.95 |
| 2 Flywheel Pullers | 1 | 117.91 | 117.91 |
| Air Hose and Air Connectors | 1 | 32.98 | 32.98 |
| Tools - Screw Drivers | 1 | 99 | 99 |
| upright 80 | 102 | 80 | 8160 |
| beam 16 | 640 | 16 | 10240 |
| wire deck 12 | 924 | 12 | 11088 |
| Total | | | 33977.1 |

TRADEMARK
REEL: 007159 FRAME: 0022

# WARE HOUSE

| Name | Qty | Price |
|---|---|---|
| Pilot Bearing | | |
| Tusk Bearing Remover | 1 | 32.22 |
| K&L Strongarm | 1 | 95.75 |
| A-Frame Shop Press | 1 | 551.06 |
| 2 of Factory-Reconditional Dewalt DC925KR 18V Cordless | 1 | 123.33 |
| Cameo Adpater | 1 | 236.28 |
| Crossover Utility Box | 1 | 39.97 |
| CV Joint Puller | 1 | 329.81 |
| ATV Tires for cop unit | 1 | 68.08 |
| Drill Batteries | 1 | 555 |
| Staple gun and staples | 1 | 117.72 |
| Air Kit (11), Drill Socket x 3 (2.99), insert bits (2.99), 38 bit (7.99), Impact Kit (6.99) | 1 | 13.75 |
| Tie downs, extension cord, tape measures, 1/2 and 3/8 socket, drill bit sets, 36 ratchet wrenchs | 1 | 78.45 |
| 10 clipboards, 6 surge protector | 1 | 199.62 |
| tape guns 3 | 1 | 37.68 |
| | 1 | 34.02 |
| Camera's | 1 | 400 |
| Camera's | 1 | 319.67 |
| Bolt Cutters | 1 | 24.75 |
| Wood, 18"K Bolt, Skill Saw 71/4, HammerDrill | 1 | 975.05 |
| Ahm Step Ladder 60 | 10 | 600 |
| Cord & Safety Glasses | 1 | 33.22 |
| 8 Fire extinguishers | 1 | 400 |
| Elect tape- wirecutter-wiring tool-long nose pliers | 1 | 41.91 |
| alarm sensors assets | 10 | 771.8 |
| Warehouse Fan98 (total on receipt) | 1 | 980 |
| Floor Scale, 6600-lb 40x40 | 1 | 398.68 |
| two complete tool boxes and tools | 1 | 6000 |

TRADEMARK
REEL: 007159 FRAME: 0023

| | | |
|---|---|---|
| dust mask, glasses, cleaning rags, hose clamp | 1 | 17.91 |
| dewalt 10a saw | 1 | 155.9 |
| racks | 1 | 220 |
| racks | 1 | 3638.6 |
| hog ring pliers | 1 | 9.71 |
| locks and util knives | 1 | 51.78 |
| 3/8" dr rev ratchet | 1 | 10.79 |
| Flywheel Puller | 1 | 117.91 |
| air hose, air inflator, plug, coupler 32.98 | 1 | 32.98 |
| Racks – 14 uprights ($65) 101 Beams ($15) | 1 | 2473 |
| TOTAL | | 20186.4 |

TRADEMARK
REEL: 007159 FRAME: 0024

# MOLDS

| Name | QTY | Price | Total |
|------|-----|-------|-------|
| Enclosure Molds | 1 | 9200 | 9200 |
| UTV for Molds | 1 | 5900 | 5900 |
| Utility Patent | 1 | 4390 | 4390 |
| International Trademarks | 1 | 5390 | 5390 |
| Netsuite Investment (claim against them) | 1 | 102000 | 102000 |
| Enovation Software | 2 | 97560 | 97560 |
| Additional Trademarks | 8 | 1592 | 1592 |
| | | | 226032 |
| Stopped using netsuite, need to sue. | | | -102000 |
| Total Actual | | | 124032 |

TRADEMARK
REEL: 007159 FRAME: 0025

# TRAILERS

| Name | QTY | Price | Total |
|------|-----|-------|-------|
| Generator 5000 Onan | 1 | 1900.00 | 1900.00 |
| Generator Adapter | 1 | 47.47 | 47.47 |
| Power Force Inverter | 1 | 377.11 | 377.11 |
| 220 Cord | 1 | 102.58 | 102.58 |
| Carpet (3) 10x50 | 1 | 1600.87 | 1600.87 |
| TOTAL | | | 4028.03 |

## Furniture / Other

| Name | QTY | Price | Total | |
|---|---|---|---|---|
| XL Desk | 3 | 230 | 690 | |
| Large Desk | 5 | 150 | 750 | |
| Medium Desk | 1 | 85 | 85 | |
| Small Desk | 3 | 50 | 150 | |
| Large File Cabinet | 6 | 125 | 750 | |
| Medium File Cabinet | 2 | 100 | 200 | |
| Good Rolling Chair | 6 | 150 | 900 | |
| Rolling Chair | 16 | 90 | 1440 | |
| Mesh Chair | 0 | 100 | 0 | |
| Sitting Chair | 5 | 40 | 200 | |
| Conference Chair | 0 | 45 | 0 | |
| Conference Table Wood | 1 | 150 | 150 | |
| Conference Table Glass | 1 | 300 | 300 | |
| Couch Ikea | 0 | 275 | 0 | |
| Office Fan | 2 | 30 | 60 | |
| Ikea Table, Accessories | 0 | 800 | 0 | |
| Pictures | 8 | 100 | 800 | |
| Curtains | 2 | 139.1 | 278.2 | |
| MicroSoft Office | 3 | 199 | 597 | |
| Frames for Dealers | 1 | 53.85 | 53.85 | |
| Dirt for Trailer | 0 | 238.06 | 0 | |
| Blackout Curtains Navy | 0 | 55.99 | 0 | |
| Giant Safe | 0 | 867.01 | 0 | |
| Shop Press | 1 | 123.33 | 123.33 | |
| K&L Supply Tire Changer | 0 | 1530.92 | 0 | |
| Impact Gun | 2 | 101.99 | 203.98 | |
| CV Joint Puller | 1 | 68.08 | 68.08 | |
| Dewalt Battery 2 Pack | 8 | 117.72 | 941.76 | |
| Plastic Plug Puller | 6 | 9.7 | 58.2 | |
| Vinyl Chair Mat | 2 | 68.5 | 137 | |
| Roomba | 1 | 139 | 139 | |
| Pitney Bowes Printer | 1 | 150 | 150 | |
| Radios | 15 | 22 | 330 | |
| White Board | 6 | 25.72 | 154.32 | |
| Sunbeam Microwave | 3 | 55.39 | 166.17 | |
| Magic Chef Microwave | 0 | 75 | 0 | |
| Black Square Shelves | 2 | 40 | 80 | |
| Small Glass Tables | 0 | 40 | 0 | |
| Zebra Printers | 4 | 150 | 600 | |
| Black End Tables | 0 | 40 | 0 | |
| Keurig Machine | 2 | 200 | 400 | |
| Original Coffee Maker | 1 | 50 | 50 | |

TRADEMARK
REEL: 007159 FRAME: 0027

| TOTAL | | | 11005.89 |
|---|---|---|---|

## Advertising/Promo

| Name | QTY | Price | Total |
|---|---|---|---|
| Aluminum Booth | 0 | 2773.34 | 0 |
| Two Bros Stand | 1 | 238.95 | 238.95 |
| Go Pro Cameras 2 | 4 | 280 | 1120 |
| Good Helmet | 6 | 110.2 | 661.2 |
| Helmets General | 8 | 66 | 528 |
| 10 Graphics Kits | 0 | 1250.46 | 0 |
| Sound Proof Material | 0 | 215.54 | 0.00 |
| 20x40 tent | 1 | 4829.46 | 4829.46 |
| 10.0 Memory SD Card | 1 | 36.49 | 36.49 |
| Camera 60d, Mic, Light, Bag | 1 | 1120.25 | 1120.25 |
| 2.0 external hd | 2 | 248.39 | 496.78 |
| Show display for builts, Mats, Banners, PU Orders | 1 | 2112.75 | 2112.75 |
| 12 Mesh Chairs | 2 | 356.37 | 712.74 |
| 3 Pop up Tables | 1 | 128.91 | 128.91 |
| 10x10 pop up | 1 | 100.25 | 100.25 |
| Kodak Camera | 1 | 56.42 | 56.42 |
| TOTAL | | | 12142.2 |

## Computers/Monitor/Printer/Phones

| Name | QTY | Price | Total |
|---|---|---|---|
| voip headsets | 3 | 165 | 495 |
| Wireless headsets | 2 | 190 | 380 |

TRADEMARK
REEL: 007159 FRAME: 0028

| | | | |
|---|---|---|---|
| Laptop New | 6 | 350 | 2100 |
| Laptop Old | 4 | 175 | 700 |
| Att Work Cell Phones | 6 | 100 | 600 |
| AlienWare Computer | 2 | 2372.05 | 4744.1 |
| Back Pack Alien Ware | 2 | 124.18 | 248.36 |
| VOIP Phone | 13 | 80 | 1040 |
| Monitor | 13 | 50 | 650 |
| Computer Tower | 2 | 300 | 600 |
| Lazer Printer | 7 | 179 | 1253 |
| Apple Laptop, with External | 1 | 2620.82 | 2620.82 |
| Cell Phone Metro 2 | 2 | 100 | 200 |
| Keyboard | 6 | 17.23 | 103.38 |
| Mouse | 4 | 14.95 | 59.8 |
| Iphone5 | 1 | 518.02 | 518.02 |
| Airplane inverter | 0 | 99 | 0 |
| Small Camera | 1 | 130 | 130 |
| Small Video Camera | 2 | 499 | 998 |
| Big Sony Camera | 1 | 3486.73 | 3486.73 |
| 3 Folding Tables | 8 | 116.32 | 930.56 |
| Phone Cord | 3 | 16.16 | 48.48 |
| Iphone4 for Warranty | 1 | 51.03 | 51.03 |
| Cork Boards | 2 | 95.08 | 190.16 |
| Trash Cans | 10 | 18 | 180 |
| black window curtains | 0 | 23.74 | 0 |
| Case for Hard drives | 0 | 87.45 | 0 |
| Gas Cans (2) | 9 | 36.7 | 330.3 |
| Headset | 0 | 210.99 | 0 |
| Vag-Com Cable | 0 | 11.98 | 0 |
| Voip headsets | 0 | 208.77 | 0 |
| VOIP Phone | 0 | 61.95 | 0 |
| Tablet with Case | 2 | 142.98 | 285.96 |
| Bluetooth Headset | 0 | 36.12 | 0 |
| 15.6Inch Laptop | 0 | 399.99 | 0 |
| 16Inch Monitor | 0 | 69.99 | 0 |
| Wireless Mouse | 1 | 8.6 | 8.6 |
| Keyboard | 0 | 6.86 | 0 |
| 15.6Inch Laptop | 0 | 419.99 | 0 |
| 20Inch Monitor | 1 | 99.99 | 99.99 |
| VOIP Phone and Power Cord | 0 | 79.68 | 0 |
| HDMI Cable | 4 | 5.99 | 23.96 |
| HDTV XBOX Cable | 0 | 6.3 | 0 |
| 35' Ethernet Cable | 4 | 9.99 | 39.96 |
| Lithium Battery Charger | 0 | 11.09 | 0 |
| VOIP Phone | 0 | 62 | 0 |

TRADEMARK
REEL: 007159 FRAME: 0029

| | | | |
|---|---|---|---|
| Apple Desktop | 0 | 1279 | 0 |
| Apple Superdrive | 1 | 79 | 79 |
| Wireles Gaming Mouse | 0 | 24.98 | 0 |
| Linksys Modems | 3 | 100 | 300 |
| Main Router | 1 | 100 | 100 |
| Brother Printers | 3 | 300 | 900 |
| VGA Cables | 3 | 10 | 30 |
| Network/Ethernet Cables | 13 | 10 | 130 |
| Wifi Adapters | 3 | 50 | 150 |
| G-Drives | 3 | 250 | 750 |
| 1TB External Hard Drive | 1 | 100 | 100 |
| | | 25655.21 | 48803.3 |

TRADEMARK
REEL: 007159 FRAME: 0030

# VEHICLES

| Name | QTY | Price | Total |
|------|-----|-------|-------|
| 2017 Ram 1500 2dr | 1 | 23000.00 | 23000.00 |
| 2017 Ram 1500 4dr | 1 | 44000.00 | 44000.00 |
| 2017 VW Touareg | 1 | 40000.00 | 40000.00 |
| TOTAL | | | 107000.00 |

TRADEMARK
REEL: 007159 FRAME: 0031



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 9, 2020**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| ODES INDUSTRIES, LLC | § | Case No. 19-43582 |
| | § | |
| DEBTOR | § | |

## ORDER AUTHORIZING
## <u>DEBTOR TO SELL PROPERTY OF THE ESTATE</u>

This matter having come before this Court on the *Motion to Sell Property of the Estate*

(the"Motion"), pursuant to 11 U.S.C. §§363(b) and (f), and Rule 6004 of the Federal Rules of

Bankruptcy Procedure, filed by Odes Industries, LLC.,   Debtor and Debtor-in-Possession

("Debtors"); the Court finds that it has jurisdiction of this matter pursuant to 28 U.S.C. §§157 and

1334; the Court finds that this is a core proceeding pursuant to 28 U.S.C. §157(b)(2); the Court finds

---

**TRADEMARK
REEL: 007159 FRAME: 0032**

that the Debtor has shown good, sufficient and sound business purpose and justification for the relief

requested in the Motion; the Court finds that the relief requested in the Motion is in the best interests

of the Debtor, its estate and the creditors thereof; the Court finds that proper and adequate notice of

the Motion and the hearing thereon has been given and that no other or further notice is necessary;

the Court finds that no creditor has filed an objection that has not been resolved to the Motion; and

the Court finds that, upon the record herein after due deliberation thereon, hereby makes the

following Findings of Fact and Conclusions of Law:

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

1.    Among other properties owned by the Debtor, the Debtor owns certain part inventory and equipment ("Property") as set forth in the Motion which the Debtor seeks to sell. However, to avoid confusion Property does not include two Toyota forklifts Model No. 8FGCU25, Serial numbers 81273 and 81289.

2.    A reasonable opportunity to object or be heard regarding the Motion has been afforded to all interested persons and entities, including those claiming an interest in the Property.

3.    On February 12, 2020, the Court entered an order approving bidding procedures with respect to the Property and approving the proposed transaction with Massimo Motor Sports, Inc. ("Purchaser") as the stalking horse bid. *See* Docket No. 62. While the Debtor aggressively marketed the Property in accordance with the bidding procedures, no other qualified bids were received by the bid deadline. Therefore, the Debtor has determined in the exercise of its reasonable business judgment to sell the Property to Purchaser under the terms of Purchaser's stalking horse bid.

4.    The Debtor has demonstrated good, sufficient and sound business reasons and justification for the sale of the Property as requested in the Motion.

5.    The sale of the Property, under Section 363(b) and (f) of the Bankruptcy Code for consideration noted in the Motion and in the approved bidding procedures is in the best interests of the Debtor, its estate and its creditors.

6.    The offer made by Purchaser to the estate for the purchase of the Property pursuant to Section 363 of the Bankruptcy Code constitutes the highest and best offer received by the Debtor for its interest in the Property.

7.    The consideration to be paid constitutes adequate and fair value for the Property.

**TRADEMARK
REEL: 007159 FRAME: 0033**

8. The sale of the Property was negotiated and entered into in good faith and from arm's-length positions between the Debtor and the Purchaser.

9. The Purchaser is a good faith purchaser as that term is used in Section 363(m) of the Bankruptcy Code.

## II.   ORDERS OF THE COURT:

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby,

ORDERED that the Motion is granted. It is further,

ORDERED that, pursuant to Section 363 of the Bankruptcy Code, and subject to the terms and conditions set out in this Order, the Debtor is authorized to sell the Property free and clear of all liens, interests, claims and encumbrances, except for the liens that secure 2020 ad valorem taxes which shall remain attached to the Property, to the Purchaser in exchange for the consideration of $500,000. It is further,

ORDERED that the parties are authorized and directed to take all actions, including the execution of documents, necessary or appropriate to affect the sale of the Property. It is further,

ORDERED that, at Closing all proceeds paid to Debtor shall be held in the Debtor-in-possession account subject to further Order of this Court. All existing liens and security interests shall attach to the proceeds in the same order and priority as they exist in the Property. It is further,

ORDERED that the purchaser is afforded the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code. It is further,

ORDERED that all entities, governmental or otherwise, shall accept and honor the sale of the Property, in accordance herewith and the Bankruptcy Code. It is further,

ORDERED that this sale is final and shall be effective and enforceable immediately upon entry of this Order and this Order shall not be stayed pursuant to Bankruptcy Rule 6004(h).

TRADEMARK
REEL: 007159 FRAME: 0034

### END OF ORDER ###

TRADEMARK
REEL: 007159 FRAME: 0035

FILED
In the Office of the
Secretary of State of Texas

NOV 1 4 2016

Corporations Section

## CERTIFICATE OF CONVERSION
## OF
## ODES UTVS LLC

1.    The converting entity, ODES UTVS LLC, is a California limited liability company (hereinafter referred to as the "Converting Entity");

2.    The converted entity, ODES UTVS LLC, is a limited liability company registered to do business in Texas and is assigned the following Texas SOS file number 0801754434 (hereinafter referred to as the "Converted Entity");

3.    A plan of conversion has been approved as required by California law and the Converting Entity's governing documents;

4.    The signed plan of conversion is on file at the Converting Entity's principal place of business located at 1815 Rustin Ave., Suite A, Riverside CA 92507-7427;

5.    The signed plan of conversion will be on file after the conversion at the Converted Entity's principal place of business located at 2007 Royal Lane, Suite 100A, Dallas 75229;

6.    A copy of the plan of conversion will be, on written request, furnished without cost by the Converting Entity before the conversion, or by the Converted Entity after the conversion, to any owner or member of the Converting Entity or the Converted Entity;

7.    The Converted Entity will be liable for payment of any and all required franchise taxes in the State of Texas.

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument, certifies under penalty of perjury that undersigned is authorized to execute the filing instrument and certifies the statements set forth are true and accurate to the best of his knowledge.

DATED this _10th_ day of November, 2016:

MICHAEL SMITH, Member of
ODES UTVS LLC, a California Limited
Liability Company

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $300**



**Certificate of Formation**
**Limited Liability Company**

This space reserved for office use.

**FILED**
**In the Office of the**
**Secretary of State of Texas**

**NOV 1 4 2016**

**Corporations Section**

### Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

**ODES UTVS LLC**

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

### Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☑ A. The initial registered agent is an organization (cannot be entity named above) by the name of:

**InCorp Services, Inc.**

OR

☐ B. The initial registered agent is an individual resident of the state whose name is set forth below:

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|
| | | | |

C. The business address of the registered agent and the registered office address is:

| 815 Brazos St., Ste. 500 | Austin | TX | 78701 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

### Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☐ A. The limited liability company will have managers. The name and address of each initial manager are set forth below.

☑ B. The limited liability company will not have managers. The company will be governed by its members, and the name and address of each initial member are set forth below.

**GOVERNING PERSON 1**

NAME (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| Michael | | Smith | |
|---|---|---|---|
| First Name | M.I. | Last Name | Suffix |

OR
IF ORGANIZATION

Organization Name

ADDRESS

| 2007 Royal Lane, Suite 100A | Dallas | TX | US | 75229 |
|---|---|---|---|---|
| Street or Mailing Address | City | State | Country | Zip Code |

Form 205     4

**TRADEMARK**
**REEL: 007159 FRAME: 0037**

## GOVERNING PERSON 2

**NAME** (Enter the name of either an individual or an organization, but not both.)
**IF INDIVIDUAL**

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

**OR**
**IF ORGANIZATION**

_Organization Name_
**ADDRESS**

| Street or Mailing Address | City | State | Country | Zip Code |
|---|---|---|---|---|

## GOVERNING PERSON 3

**NAME** (Enter the name of either an individual or an organization, but not both.)
**IF INDIVIDUAL**

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

**OR**
**IF ORGANIZATION**

_Organization Name_
**ADDRESS**

| Street or Mailing Address | City | State | Country | Zip Code |
|---|---|---|---|---|

### Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed under a plan of conversion. The Converting Entity ODES UTVS LLC is a limited liability company, organized under the laws of the State of California on October 3, 2011, and is located at 1815 Rustin Ave., Ste. A, Riverside CA 92507.

TRADEMARK
REEL: 007159 FRAME: 0038

## Organizer

The name and address of the organizer:

Michael Smith
_____
*Name*

| 2007 Royal Lane, Suite 100A | Dallas | TX | 75229 |
|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Zip Code* |

### Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____


### Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: _11/10/16_____

_____
Signature of organizer

Michael Smith
_____
Printed or typed name of organizer

Form 205                                                                                      6

**TRADEMARK**
**REEL: 007159 FRAME: 0039**

| **Form 424** |  | **Filed in the Office of the** |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>**Filing Fee: See instructions** | **Certificate<br>of Amendment** | **Secretary of State of Texas<br>Filing #: 802583697 09/25/2017<br>Document #: 76321307003<br>Image Generated Electronically<br>for Web Filing** |

### Entity Information

The filing entity is a: **Domestic Limited Liability Company (LLC)**

The name of the filing entity is:   **ODES UTVS LLC**

The file number issued to the filing entity by the secretary of state is: **802583697**

### Amendment to Name

The amendment changes the formation document of the filing entity to change the article or provision that names the entity. The article or provision is amended to read as follows:

The name of the filing entity is:

## ODES Industries LLC

A letter of consent, if applicable, is attached.

### Statement of Approval

The amendment has been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

### Effectiveness of Filing

☑A. This document becomes effective when the document is filed by the secretary of state.

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and declares under penalty of perjury that the undersigned is authorized under the Texas Business Organizations Code to execute the filing instrument.

Date: **September 25, 2017**

**Michael Smith**

Signature of authorized person

FILING OFFICE COPY

**TRADEMARK<br>REEL: 007159 FRAME: 0040**