UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MASSIMO MOTOR SPORTS LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:21-CV-02180-X |
| SHANDONG ODES INDUSTRY | § | |
| CO.; ODES USA INC.; LIL PICK UP, | § | |
| INC.; SMG DISTRIBUTION & | § | |
| ASSOCIATES INC.; 14078 | § | |
| MERIDIAN PARKWAY INC.; SC | § | |
| AUTOSPORTS, LLC; ODES USA | § | |
| INC. (TX); and NATHAN D. | § | |
| THREET, | § | |
| | § | |
| *Defendants.* | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is plaintiff Massimo Motor Sports LLC's (Massimo) motion for a temporary restraining order and preliminary injunction against defendant Nathan Threet. [Doc. No. 27]. The Court previously denied Massimo's motion for a temporary restraining order and preliminary injunction against the seven entity defendants in this case.[1] [Doc. No. 59]. Now that Threet has responded to the motion, the Court rules on Massimo's motion with respect to him. For the reasons explained below, the Court **GRANTS** the motion for a temporary restraining order against defendant Threet.

---

[1] SC Autosports, LLC; Shandong Odes Industry Co.; Lil Pick Up, Inc.; SMG Distribution & Associates, Inc.; 14078 Meridian Parkway Inc.; Odes USA Inc.; and Odes USA Inc. (TX).

I.      Factual Background

A.      The Entity Defendants

Because Threet is the only individual defendant in this case, the Court refers to the other defendants as "the entity defendants."  They are SC Autosports LLC; Shandong Odes Industry Co.; Lil Pick Up, Inc.; SMG Distribution & Associates, Inc.; 14078 Meridian Parkway Inc.; Odes USA Inc.; and Odes USA Inc. (TX).  For almost two decades, Massimo has worked in at least some capacity with at least some of the entity defendants to design, manufacture, distribute, and sell all-terrain and all-utility vehicles.  In October 2019, Odes and Massimo entered into an agreement giving Massimo the exclusive right to sell certain Odes-branded products.  By the terms of the agreement, Odes retained the intellectual property rights to the products that Massimo was allowed to (exclusively) sell.

In March 2020, Massimo purchased certain assets from the bankruptcy estate of one of Odes's distributors.  In this case, Massimo argues that it purchased several Odes-related trademarks from that bankruptcy estate.  Odes argues that Massimo is mistaken because the marks that Massimo thought that it had purchased from the distributor had actually been transferred to Odes years earlier, and that—regardless—Massimo knew from its agreement with Odes that all intellectual property was retained by Odes.

The Odes-Massimo relationship soured and, in October 2021, the exclusive distributor agreement expired.

2

### B.     Nathan Threet

In June 2020, Massimo hired defendant Nathan Threet as Director of Dealer Development.  In that role, Threet identified and assisted local dealers in acquiring dealer agreements to purchase products from Massimo.  Once a local dealer got a dealer agreement with Massimo, Threet served as the point of contact and would regularly communicate with the dealers.

In April 2021, Massimo promoted Threet to Chief Operating Officer.    In that role, Massimo alleges that Threet was privy to several types of confidential information, including customer lists, prospect lists, business strategy plans, financial and pricing information, and communications concerning Massimo's business strengths and weaknesses.  Massimo also alleges that Threet was even privy to Massimo's discussions concerning legal strategy for this case.

After Threet became Chief Operating Officer, he executed an Employment, Confidentiality, Nondisclosure, and Non-Compete Agreement with Massimo.  Threet promised to comply with particular employment and post-employment obligations, including: (i) not using or revealing any confidential information; (ii) not retaining any confidential information; (iii) surrendering all confidential information to Massimo and, upon request, certifying in writing that he surrendered all confidential information to Massimo; (iv) not directly or indirectly competing with Massimo during employment and for two years following employment; and (v) not owning, managing, operating, consulting with, or accepting employment in a business

substantially similar to or competitive with Massimo for two years after employment.[2]  The non-compete covenant is limited to the state of Texas.

Around September 2021, Massimo grew concerned about changes in Threet's behavior, including decreased communication with Massimo's leadership and perceived deficiencies in Threet's communications with his team and Massimo's customers.  On October 1, 2021, Threet gave Massimo his two-weeks' notice of his intention to leave Massimo.  On October 5, 2021, Massimo disabled Threet's access to Massimo's internal system.

Although Threet did not tell Massimo where he was going to work, Massimo learned on October 7, 2021, that Threet was headed to work for Odes USA—a competitor of Massimo and a defendant in this suit.

Massimo commenced an investigation and discovered that Threet had been working for Odes USA's parent company and co-defendant in this case, Shandong, as early as September 13, 2021.  (September 13, 2021, is also the day that Massimo commenced this lawsuit.)  Threet allegedly began working for Odes USA as early as September 22, 2021—when Threet organized Odes USA in Texas, listed himself as the registered agent, and later executed an assumed name certificate on behalf of Odes USA.  Massimo also discovered that Threet had been using the e-mail address "nathan.threet@aodes.com" since as early as September 29, 2021.

On October 14, 2021, Massimo e-mailed Threet about violating his Employment Agreement with Massimo.   Threet denied the existence of the

---

[2] Doc. No. 29-3 at 31–34.

Employment Agreement and asked Massimo to produce it.  The next day, Massimo sent Threet a cease-and-desist letter along with a copy of the Employment Agreement that he signed.  Threet responded to the e-mail stating that he doesn't "remember signing" a non-compete agreement but "[i]t looks as though [he] did."   Threet also stated that he would not be working for Odes USA or Shandong Odes, nor would he be speaking with any of Massimo's dealers.

On October 17, Threet was removed as the registered agent of Odes USA in Texas, and Threet allegedly moved to Arkansas the next day.

## II.    Procedural Background

Massimo filed its original complaint on September 13, 2021, alleging trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), common-law trademark infringement, common-law unfair competition, cybersquatting under 15 U.S.C. § 1125(d), breach of contract, and tortious interference with contract.  On November 9, Massimo filed an amended complaint, adding Nathan Threet as a defendant.  Against Nathan Threet, Massimo asserts a breach-of-contract claim for his alleged violation of his Employment Agreement and a trade-secret-misappropriation claim under the Defend Trade Secrets Act.

On November 9, 2021, Massimo moved for a temporary restraining order and preliminary injunction against all defendants.  [Doc. No. 27].  On December 28, the Court denied Massimo's request for a temporary restraining order and preliminary injunction with respect to the entity defendants, finding that Massimo had failed to

5

show a substantial threat of irreparable harm because of its delay in seeking injunctive relief against the entity defendants.[3]  [Doc. No. 59].  However, the Court did not rule on the motion with respect to Nathan Threet because Threet had just recently been served and the Court granted a request to extend Threet's response deadline.  Now, the Court rules on the motion with respect to defendant Threet.

## III.   Temporary Restraining Order

An applicant seeking a temporary restraining order "must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest."[4]   A temporary restraining order "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."[5]  The applicant bears the burden of persuasion on all four elements, and failure on any one of them warrants denial.[6]

---

[3] The same circumstances of delay are not present with respect to Threet.  Whereas Massimo did not seek injunctive relief against the entity defendants until a few months after it learned of their alleged misconduct, Massimo sought injunctive relief against Threet a mere three weeks after discovering his alleged misconduct.  *See* Doc. No. 70 at 5–7.

[4] *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012); *see also Liccardi v. Smith*, No. 3:21-CV-0314-E (BH), 2021 WL 5184092, at *2 (N.D. Tex. Oct. 19, 2021) (Ramirez, J.) ("[T]he plaintiff must satisfy the substantive requirements for a preliminary injunction to obtain a TRO."), *report and recommendation adopted sub nom. Liccardi v. Fed. Express Corp.*, No. 3:21-CV-00314-E, 2021 WL 5140900 (N.D. Tex. Nov. 4, 2021) (Brown, J.).

[5] *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (cleaned up).

[6] *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009); *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

Massimo seeks a temporary restraining order restraining Threet from contacting any of Massimo's customers and restraining Threet from using or allowing any other person to use any Massimo trade secrets, confidential information, or proprietary information.

## A. Likelihood of Success on the Merits

The Court must determine the likelihood of Massimo's success on the merits of its claims (breach of contract and trade-secret misappropriation) against Threet. Non-compete covenants in employment agreements are enforceable if they are "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer."[7]  The Supreme Court of Texas has held that an "otherwise enforceable agreement" can be created when an "employer promised to provide confidential information and specialized training and the employee promised not to reveal confidential information"—and the employer does indeed "provide[] such confidential information or training."[8]

First, the Court finds it substantially likely that the non-compete covenant is enforceable.  Threet agreed not to compete with Massimo in exchange for Massimo

---

[7] *Salas v. Chris Christensen Sys., Inc.*, No. 10-11-00107-CV, 2011 WL 4089999, at *18 (Tex. App.—Waco Sept. 14, 2011, no pet).

[8] *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 655 (Tex. 2006).

providing confidential information to Threet.[9]  Massimo in fact provided Threet with confidential information, including prospective clients lists, business strategy, financial and pricing information, and communications concerning Massimo's business strengths and weaknesses.[10]  These items likely qualify as confidential information,trade secrets, or both.[11]  The non-compete covenant's enforcement is limited to actions occurring in the state of Texas, within two years of termination of employment, and to activities only "substantially similar to or competitive with" Massimo.[12] The non-compete covenant thus appears to be reasonably limited by time, geographical area, and scope of activity.[13]

Second, having found it substantially likely that the non-compete covenant is enforceable, the Court also finds it substantially likely that Threet violated the covenant.  As explained above, Massimo alleges that Threet began working for a direct competitor in a substantially similar role within the state of Texas—not just

---

[9] Doc. No. 29-3 at 145, 147.

[10] Doc. No. 29 at 9.

[11] *First Command Fin. Plan., Inc. v. Velez*, No. 4:16-CV-01008-O, 2017 WL 2999405, at *6 (N.D. Tex. May 8, 2017) (O'Connor, J.); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 426 (Tex. App.— Houston [14th Dist.] 2007, no pet.); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467–68 (5th Cir. 2003) (noting that "[t]he Texas Supreme Court defines a trade secret as 'any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" (quoting *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 766 (Tex. 1958))).

The Court also notes that Threet agreed that Massimo's confidential information constitutes trade secrets and would be treated as such by Threet.  Doc. No. 29-3 at 146.

[12] Doc. No. 29-3 at 147.  *See, e.g.*, *French v. Cmty. Broad. of Coastal Bend, Inc.*, 766 S.W.2d 330, 333 (Tex. App. 1989) (upholding three-year term for non-compete covenant).

[13] *Salas*, 2011 WL 4089999, at *18.  Although the Court finds that the two-year restriction on non-competition after Threet's employment is likely reasonable, the Court does *not* find the three-year look-back clause in the definition of "customer" to be reasonable.  *See* Doc. No. 29-3 at 146.  As the Court explains in Section IV.A n.24, the Court reforms the definition of "customer" in the contract to conform with Texas Supreme Court standards.

within two years after Threet's employment ended with Massimo, but indeed simultaneously during his employment with Massimo. In his response to the motion, Threet does not deny that he began working for Odes USA (or Shandong) when he was working for Massimo.[14] The Court thus finds it substantially likely that Massimo will succeed on its claims against Threet.

## B. Substantial Threat of Irreparable Harm

Next, the Court must decide if Massimo has shown a substantial threat of irreparable harm if the Court does not grant an injunction against Threet. At this stage, especially before there has been any discovery, all Massimo needs to show is that "it appears very possible that a trade secret will be revealed in violation" of the non-compete covenant.[15] The Fifth Circuit has noted that "fear of irreparable injury is realistic" when an employee has "knowledge of at least some" trade secrets and "has been placed in a comparable position with a direct competitor without restriction against using or disclosing" the former employer's trade secrets.[16]

It is substantially likely that Threet is working in a comparable position with Massimo's direct competitor, Odes USA, in a way that will cause irreparable injury to Massimo. Threet describes his work for Odes as "consulting" and submits that he is assisting Odes with obtaining state licenses but not "sales to local dealers,

---

[14] Doc. No. 64 at 8–12.

[15] *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 504 (5th Cir. 1982).

[16] *Id.* at 505; *see also Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 336 (5th Cir. 2013) ("As one Texas court of appeals explained, '[w]hen a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed.' According to that decision, '[t]he threatened disclosure of trade secrets constitutes irreparable injury as a matter of law.'" (alteration in original) (quoting *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Ft. Worth 2005, no pet.))).

contacting local dealers, developing and establishing dealer distribution networks, maintaining local dealer relationships, or discussing any Massimo confidential information or trade secrets."[17]  Threet also contends that he has not "competed with Massimo's business . . . within the State of Texas."[18]  But Threet admits to "assist[ing] Odes's "registration in Texas."[19]  Threet also admits to posting in an Odes Owners Facebook group a few weeks after he left Massimo that Massimo's exclusive distributer agreement had ended and that members should "stay tuned."[20]

Threet admits to assisting Odes USA within the state of Texas and has been communicating with dealers and dealer distribution networks.  Thus, "it appears very possible that a trade secret will be revealed in violation" of the non-compete covenant.[21]  The Court finds that Massimo has shown a substantial threat of irreparable harm.

## C. Balance of Harms

The third step in the injunctive inquiry is determining if the threatened injury to Massimo outweighs any harm that the injunction might cause to Threet.  As explained above, Massimo has shown that Threet's conduct constitutes a threat of

---

[17] Doc. No. 64 at 11–12.

[18] *Id.* at 12.

[19] *Id.* at 10.

[20] Doc. No. 28 at 15–16; Doc. No. 64 at 11.

[21] *FMC Corp.*, 677 F.2d at 504; *see also Keurig Dr Pepper Inc. v. Chenier*, 2019 WL 3958154, at *11 (E.D. Tex. Aug. 22, 2019) (granting temporary restraining order in similar case and noting that "[i]n Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury." (cleaned up)); *Courtroom Scis., Inc. v. Andrews*, No. CIV.A.3:09-CV-251-0, 2009 WL 1313274, at *14 (N.D. Tex. May 11, 2009) (O'Connor, J.) ("The loss of confidential business information by dissemination by ex-employees is a particularly acute injury not susceptible to purely financial compensation.").

substantial loss of goodwill, customers, and trade secrets.  As for harm to Threet, the Court does not (as explained below) enjoin him from working or earning an income—even from Odes USA.[22]  Rather, the Court requires Threet to refrain from certain discrete activities that would violate the contract to which Threet is substantially likely to be already bound.  The threatened injury to Massimo outweighs any harm to be suffered by Threet.

## D.  The Public Interest

Finally, the Court examines whether granting a temporary restraining order will not disserve the public interest.  Texas law recognizes that valid non-compete covenants increase industry productivity by encouraging employers to entrust confidential information to key employees and by protecting "the costs incurred to develop human capital . . . against competitors who, having not made such expenditures, might appropriate the employer's investment."[23]  The public interest is not disserved by the Court's temporary restraining order requiring Threet to comply with what is substantially like to be a valid non-compete covenant.

## IV.    Conclusion

The Court **GRANTS** Massimo's motion for a temporary restraining order against defendant Nathan Threet.

---

[22] *Nexstar Broad. Grp., Inc. v. Lammers*, No. 3:08-CV-0953-K, 2008 WL 2620098, at *4 (N.D. Tex. June 27, 2008) (Kinkeade, J.) (finding that threated injury to plaintiff outweighed harm to defendant where defendant "would still be permitted to earn an income" but was enjoined from engaging in certain discrete activities).

[23] *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 769 (Tex. 2011).

11

## A. Enjoined Activity

The Court **ORDERS** that a temporary restraining order consistent with this Order and Opinion be entered against Threet.  For the duration of the temporary restraining order, Threet is enjoined from:

1. Contacting any Massimo customers in the state of Texas with whom he worked during the final year of his employment with Massimo.[24]

2. Using or disclosing within the state of Texas any of Massimo's confidential information and/or trade secrets.

## B. Timeline

The Court **ORDERS** that this temporary restraining order shall last for fourteen days after Massimo posts the bond required by this Order.  This temporary restraining order shall expire at 5:00 pm on the fourteenth day after Massimo posts the bond.

---

[24] The Texas Supreme Court has held as reasonable a non-compete provision prohibiting contact with customers that the employee worked with in the final twelve months of employment. *See Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386 (Tex. 1991).  It has struck down provisions that are "more expansive."  *Id.*  The non-compete contract here contains a three-year look-back provision for the definition of "customer."  Doc. No. 29-3 at 146.  The Court finds that period too expansive under Texas law.  In addition, the Court finds that customers with whom Threet can be enjoined from contacting are only those that he worked with—rather than all of Massimo's customers.  Texas Business and Commerce Code § 15.51(c) requires a court to "reform" an otherwise valid covenant "to the extent necessary to cause the limitations . . . to be reasonable."  While the Court is not yet reforming the agreement (which is appropriate for a final judgment), the Court is only ordering the relief the agreement warrants so far as it is consistent with Texas law.  Accordingly, this temporary restraining order applies only to Massimo customers that Threet worked with during the final twelve months of his employment.

The Court **ORDERS** Massimo and Threet to conduct discovery between themselves for up to fourteen days after Massimo posts the bond.  Discovery shall be limited to the issues discussed in this Order.

If, after fourteen days of discovery, Massimo still wishes to pursue a preliminary injunction against Threet, the Court **ORDERS** Massimo to file a motion for a preliminary injunction by the sixteenth day after it posts the bond.

If Massimo files a motion for a preliminary injunction and Threet wishes to respond, the Court **ORDERS** him to do so by the twentieth day after Massimo posts the bond.

If Threet responds and Massimo wishes to reply, the Court **ORDERS** Massimo to do so by the twenty-second day after it posts the bond.

On the twenty-eighth day after Massimo posts the bond, the Court will rule on any motion for a preliminary injunction.

## C. Bond

The Court **ORDERS** that this temporary restraining order shall not take effect unless and until Massimo files an appropriate bond in the amount of $1,000—payable to the Clerk of the Court of the Northern District of Texas at 1100 Commerce Street Dallas, TX 75242.

*     *     *

**IT IS SO ORDERED** this 14th day of February, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE