UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MASSIMO MOTOR SPORTS, LLC,    §
                                §
     *Plaintiff,*         §
                                §
v.                          §     Civil Action No. 3:21-CV-2180-X
                                §
SHANDONG ODES INDUSTRY   §
CO., LTD., et al.,           §
                                §
     *Defendants.*     §
                                §

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Massimo Motor Sports, LLC's motion for partial summary judgment (Doc. 154), Defendant Lil Pick Up, Inc.'s motion for summary judgment (Doc. 156), Defendant Nathan D. Threet's motion for summary judgment (Doc. 159), Defendant Odes USA Inc. (TX)'s ("Odes Tex.") motion for summary judgment (Doc. 161),[1] Defendant Shandong Odes Industry Co., Ltd.'s ("Shandong") motion for summary judgment (Doc. 164), Defendant 14078 Meridian Parkway, Inc.'s ("Meridian") motion for summary judgment (Doc. 167), Defendant SMG Distribution & Associates, Inc.'s ("SMG") motion for summary judgment (Doc. 169), and Defendant Odes USA Inc. (Cal.)'s ("Odes Cal.") motion for summary judgment (Doc. 171).  (The

---

[1] In response to Odes Tex.'s motion for summary judgment, Massimo explained that it did not oppose dismissing Odes Tex. from this action.  *See* Doc. 204.  Odes Tex. filed a reply requesting attorney's fees.  *See* Doc. 227.  Most of its explanation surrounding attorney's fees is predicated on its position that the defendants are entitled to summary judgment, but the Court, as fully discussed below, denies summary judgment as to those claims.  The Court **DISMISSES WITH PREJUDICE** Defendant Odes USA Inc. (TX) from this action and therefore **FINDS AS MOOT** its motion for summary judgment.  (Doc. 161).

Court will refer to defendants Shandong, Lil Pick Up, Meridian, SMG, and Odes Cal. collectively as the "Entity Defendants.")  Having carefully considered the motions, the underlying facts, and the applicable caselaw, the Court **GRANTS IN PART** Threet's motion for summary judgment as to Counts XI and XIII (breach of the implied covenant of good faith and fair dealing and unjust enrichment) of Massimo's complaint, and otherwise **DENIES** Threet's motion.  (Doc. 159).  The Court also **DISMISSES WITH PREJUDICE** Defendant Odes USA Inc. (TX) from this action and **FINDS AS MOOT** its motion for summary judgment.  (Doc. 161).  Finally, the Court **DENIES** Massimo's motion for partial summary judgment (Doc. 154) and **DENIES** the Entity Defendants' motions for summary judgment (Docs. 156, 164, 167, 169, 171).

## I. Background

### A. Entity Defendants

Massimo distributes ATVs and UTVs in the United States.[2]  Specifically, it sells products manufactured by someone else to dealers or stores who then sell the products to the end consumer.[3]  Shandong is a manufacturer of ATVs and UTVs, and many of its powersport vehicles are branded as Odes products.[4]  Around 2011, a then-distributor for Shandong (either referred to by the parties as "Odes Industries" or the "Smith Distributorship") filed trademark applications with the United States Patent and Trademark Office for the following marks: "ODES," "ODES UTVS," and "ODES

---

[2] Doc. 194 at 9.

[3] *Id.*

[4] Doc. 165 at 9.

2

INDUSTRIES" (collectively, the "Odes Marks").[5]  Odes Industries subsequently filed for bankruptcy.[6]

Ownership of the Odes Marks is central to this case.  Shandong contends that Odes Industries never owned these trademarks because, beginning in the early 2000s, Shandong obtained a registration in China for the "ODES" mark and developed the Odes brand in the United States.[7]  Additionally, Shandong contends that it entered into an Assignment of Trademark agreement with Odes Industries/Smith Distributorship wherein it assigned the ODES UTVS trademark to Shandong.[8]  But Massimo contends that it owns the Odes Marks because it purchased them through the Odes Industries' bankruptcy estate and then recorded the assignments with the United States Patent and Trademark Office.[9]

Additionally, around the same time that Odes Industries filed for bankruptcy, Massimo and Shandong entered into an exclusive distribution agreement ("EDA") for the distribution of 800cc-1000cc UTV/ATVs and air-conditioned UTVs within the United States.[10]  That EDA expired in 2021.[11]  Massimo alleges that Shandong breached the EDA, and Shandong brought a counterclaim alleging that Massimo

---

[5] *Id.* at 14–17.

[6] *Id.* at 17.

[7] *Id.* at 11–13.

[8] *Id.* at 15.

[9] Doc. 194 at 9–10.  Although much of the parties' summary judgment briefing addressed an ongoing motion to reopen the Odes Industries' bankruptcy sale in the Bankruptcy Court, that court has since denied the motion to reopen.  *See infra* note 51.

[10] Doc. 98 at 9; Doc. 184 at 12–13.

[11] Doc. 165 at 23.

breached the EDA.[12]

Odes Cal. was incorporated on or about April 26, 2021.[13] Its purpose was to be Shandong's distributor of ODES products in the United States once the EDA with Massimo terminated, and it is currently distributing Shandong's ATVs and UTVs under the brands ODES and AODES in the United States.[14] Meridian leased a warehouse to Odes Cal., and Renfeng Wang, Shandong's owner, has final decision-making authority for Meridian.[15] Wang is also the president and director of SMG.[16] SMG operates the website OffRoadMall.com, which it used to sell the parts for Shandong's ATVs and UTVs in the United States up until about early 2022.[17] Lil Pick Up is a intermediary for Shandong and other exporters to facilitate the receipt and transfer of foreign goods into the United States.[18]

Massimo filed suit for trademark infringement because it alleges that the Entity Defendants sold and distributed counterfeit products which use spurious designations that are identical to, or substantially similar from, the Odes Marks, and the Vi-Lock, Dominator, Ravager, and Zeus Marks.[19] In addition, Massimo brought claims against the Entity Defendants for False Designation of Origin, Unfair

---

[12] Doc. 184 at 47–48; Doc. 98 at 39–40.

[13] Doc. 172 at 11.

[14] *Id.*

[15] Doc. 168 at 11–12.

[16] Doc. 170 at 13.

[17] *Id.*

[18] Doc. 157 at 9.

[19] Doc. 184 at 39–43.

Competition, Cybersquatting,[20] Breach of Contract (EDA),[21] Tortious Interference with Contractual Relations, and trade secret misappropriation[22] under the Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act.  Shandong brought counterclaims against Massimo for breach of contract, trademark infringement, unfair competition, and cancellation of contested registrations.[23]

Massimo moved for summary judgment as to (1) ownership of the Odes Marks, and the Vi-Lock, Dominator, Ravager, and Zeus marks, (2) a portion of its breach of EDA claim because it contends that Shandong retained a $300,000 deposit and failed to deliver Massimo's products, and (3) Shandong's breach of contract counterclaim.[24] The Entity Defendants moved for summary judgment as to Counts I–VII, IX, and X of Massimo's complaint and on the issue of whether Massimo can obtain exemplary damages.[25]

### B. Nathan Threet

Massimo hired Threet as a Director of Dealer Development in June 2020[26] and promoted him to Chief Operating Officer in April 2021.[27] The parties dispute whether Threet's employment agreement with Massimo included a non-compete clause.[28]  On

---

[20] This claim was brought against Shandong and Odes Cal. only.

[21] This claim was brought against Shandong only.

[22] These claims were brought against Shandong, Odes Cal., SMG, and Threet.

[23] Doc. 98 at 39–42.

[24] Doc. 154.

[25] Docs. 156, 164, 167, 169, 171.

[26] Doc. 160 at 15.

[27] *Id.* at 17.

[28] *See id.* at 15–17; Doc. 192 at 5–6.

behalf of Massimo, Threet worked with Shandong to handle certain warranty and repair parts issues.[29]  In September 2021, Threet agreed to assist Shandong in its preparations to start its own distributorship, including creating a new entity (Odes Tex.) and making sales "guessestimates" and providing initial high-level consulting advice on how to set up the new distributorship (Odes Cal.).[30]  In October 2021, Threet left Massimo.[31]  Threet became a paid business consultant for Odes Cal.[32]

Massimo added Threet as a defendant in this action, and this Court enjoined Threet from (1) contacting any Massimo customers in the state of Texas with whom he worked during the final year of his employment with Massimo and (2) using or disclosing within the state of Texas any of Massimo's confidential information and/or trade secrets until 5:00 pm CST on the first day of trial, or until the Court orders otherwise.[33]  In the operative complaint, Massimo brought claims against Threet for unfair competition (Count IV), breach of contract (Count VIII), trade secret misappropriation under the Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act (Counts IX, X), breach of the implied covenant of good faith and fair dealing (Count XI), breach of the duty of loyalty (Count XII), and unjust enrichment (Count XIII).[34]  Threet moved for summary judgment on all claims against him and

---

[29] Doc. 160 at 18.

[30] *Id.* at 20.

[31] *Id.*

[32] *Id.* at 22.

[33] *See* Docs. 72, 86.

[34] Massimo does not oppose summary judgment as to the claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. *See* Doc. 192 at 8.  Therefore, the Court **GRANTS IN PART** Threet's motion summary judgment as to these claims (Counts XI, XIII).

moved for summary judgment regarding whether Massimo can obtain exemplary damages against Threet.[35]

## II. Legal Standard

Courts may grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36]  A material fact is one "that might affect the outcome of the suit under the governing law."[37]  And "[a] dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[38]  The party moving for summary judgment bears the initial burden of identifying the evidence "which it believes demonstrate[s] the absence of a genuine [dispute] of material fact."[39]

## III. Analysis

### A.  Counts I–V: Trademark Infringement, False Designation of Origin, Common Law Trademark Infringement, Unfair Competition, and Cybersquatting

Ownership of the Odes Marks is a central issue in this litigation.  Massimo brought a trademark infringement claim in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), a false designation of origin claim under Section 43(a) of the Lanham Act (15 U.S.C. § 1125), a common law trademark infringement claim, an

---

[35] Doc. 159.

[36] FED. R. CIV. P. 56(a).

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[38] *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

[39] *Celotex Corp. v. Catrett*, 477 U.S. 318, 323 (1986); *see also* FED. R. CIV. P. 56(c)(1).

unfair competition claim, and a cybersquatting claim against the Entity Defendants. Shandong brought a counterclaim for trademark infringement under Section 43(a) and unfair competition against Massimo. "Section 32(1) creates a cause of action for infringement of registered marks; Section 43(a) creates a cause of action for infringement of unregistered marks."[40]  Two elements apply to both causes of action: (1) the claimant possesses a legally protectable trademark and (2) the defendant's use of the trademark creates a likelihood of confusion as to source, affiliation, or sponsorship.[41]  And the elements of common law trademark infringement and false designation of origin are the same as those under the Lanham Act.[42]

The Court will first consider Massimo's trademark infringement claims for the Odes Marks.  The Entity Defendants argue that Massimo does not own the Odes Marks.  "Whether a plaintiff has a sufficient interest in a mark to sue under the Lanham Act is a question of statutory standing.  Unlike Article III standing, statutory standing is not jurisdictional.  Instead, it asks the merits question of whether or not a particular cause of action authorizes an injured plaintiff to sue."[43]  "Section 32(1) protects registered trademarks[,]" and "only an owner or true assignee has statutory standing to bring a claim under section 32(1)."[44]  "Rights in a trademark are

---

[40] *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023).

[41] *Id.* (cleaned up); *Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*, No. 13-cv-942, 2015 WL 11120870, at *4 (N.D. Tex. Jan. 13, 2015) (O'Connor, J.) ("[T]he elements of trademark infringement and false designation of origin are identical, and the same evidence establishes both claims.").

[42] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017).

[43] *Rex Real Estate I, L.P.*, 80 F.4th at 616 (cleaned up).

[44] *Id.* (cleaned up).

determined by the date of the mark's first use in commerce.  The party who first uses a mark in commerce is said to have priority over other users."[45]  So "[o]wnership of trademarks is established by use, not registration," and a senior user may enjoin a junior user from using its mark.[46]  But ownership resulting from use in commerce is limited by the senior user's market and natural area of expansion.[47]  That is, the person to first use the mark in commerce only acquires rights to the mark within the geographic area in which he is using the mark.[48]  Conversely, "registration of a mark with the [United States Patent and Trademark Office] constitutes prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services."[49]

Here, Odes Industries registered the Odes Marks with the United States Patent and Trademark Office in 2012 and 2018.[50]  Massimo filed a trademark assignment document for the Odes Marks with the United States Patent and Trademark Office in January 2021.[51]  Shandong contends that it has used the Odes

---

[45] *Id.* at 617 (cleaned up).

[46] *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842–43 (5th Cir. 1990).

[47] *Id.*

[48] *See id.*

[49] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010).

[50] *See* Doc. 1-1.

[51] *See* Doc. 165 at 38.  Massimo claims that it purchased the Odes Marks through Odes Industries' bankruptcy estate.  When denying Shandong's motion to reopen, the Bankruptcy Court explained that the sale order, where Massimo purportedly purchased the Odes Marks from Odes Industries' estate, did not specifically identify the Odes Marks by name or registration number as part of the property authorized to be sold.  *See* Doc. 267-2 at 16–20, 26–28.  Instead, the purchase agreement between Massimo and Odes Industries' estate explained that the purchased assets included "all foreign and domestic trademarks, service marks, and other intellectual property belonging to [Odes

Marks in commerce in the United States since at least 2004.[52]  But the Court is not convinced that Shandong's summary judgment evidence—documentation indicating Shandong sold Odes products in some places in the U.S.—establishes the absence of a genuine dispute of material fact regarding its use of the Odes Marks in commerce throughout the United States because it fails to show that its use was continuous and nationwide.  Therefore, there is a fact dispute precluding summary judgment, namely whether Shandong used the Odes Marks in commerce throughout the United States thereby acquiring priority rights to the Odes Marks nationwide.  If Shandong's use in commerce was continuous throughout the United States, it would have priority to the Odes Marks under this "race to the market" rule.  If not, then the federally registered marks with the United States Patent and Trademark Office may then affect the parties' rights to the Odes Marks.[53]

---

Industries]."  *See id.*  Thus, as that court explained, if and to the extent Odes Industries did not own the Odes Marks, the generic reference to the sale of all intellectual property did not include interests that Odes Industries did not own.  *Id.* at 27–28.  Importantly, nothing in the bankruptcy court's sale order authorized the sale of, or extinguished, any rights or interests that Shandong had in any trademarks.  *Id.* at 30–31.  At bottom, the question comes back to whether Shandong acquired priority rights in the Odes Marks by first using them in commerce throughout the U.S.  If so, the Odes Marks did not belong to Odes Industries, and therefore, could not be sold to Massimo in the first instance.  If not, then the issue becomes whether Massimo's assignment of the marks was valid.  The bankruptcy court suggested that whether the sale order actually gave Massimo rights to the Odes Industries' estate is ambiguous.  *Id.* at 32.  Thus, at that point Massimo would likely need to prove up the validity of the purported assignment.

[52] Doc. 206 at 37–100 (sales contracts, invoices, purchase orders, and photographs of Shandong selling Odes-branded powersport vehicles in the U.S. as early as 2006); Doc. 206-14 at 1–2.

[53] The parties dispute whether Odes Industries assigned the registration and rights to the ODES UTVS mark to Shandong via a trademark assignment agreement.  The agreement purported to assign the rights to this mark if and when a separate contractual agreement between Shandong and Odes Industries terminated.  *See* Doc. 165 at 15.  But the parties dispute whether that contract terminated thereby effectuating the assignment.  Massimo relies on the deposition testimony of Odes Industries' owner (Doc. 203 at 206), while Shandong relies on a declaration from its owner (Doc. 206-14 at 4 n.2).  Thus, no party has established the absence of a dispute of material fact.

As for the remaining marks, Massimo also brought trademark infringement and false designation of origin claims regarding the VI-LOCK, Dominator, Ravager, and Zeus trademarks under Section 32(1) of the Lanham Act.  The Entity Defendants are not seeking summary judgment on ownership of these marks, although they dispute that Massimo owns them; instead, they contend that they never used or sold any products using those marks after the EDA terminated and therefore did not infringe them.  Massimo contends that the Entity Defendants infringed these marks before the EDA expired and points to evidence where the Entity Defendants have advertised products bearing these marks dated after expiration of the EDA.[54] Therefore, there are fact disputes concerning the ownership and use of the VI-LOCK, Dominator, Ravager, and Zeus marks precluding summary judgment.

Accordingly, the Court **DENIES** summary judgment as to Massimo's claims for trademark infringement and false designation of origin (Counts I–III) of the Odes Marks, and the VI-LOCK, Dominator, Ravager, and Zeus marks because there are fact disputes concerning ownership and use of the marks.

Massimo also brought an unfair competition claim against the Entity Defendants based on multiple theories including trademark infringement and misappropriation of Massimo's confidential information.  Because there are fact disputes concerning ownership and use of the Odes Marks and the VI-LOCK, Dominator, Ravager, and Zeus marks (as discussed above), there are also fact disputes concerning whether the Entity Defendants have engaged in unfair

---

[54] *See* Doc. 194 at 32–35; *see* Doc. 196 at 10–11; *see* Doc. 198 at 9–11; *see* Doc. 200 at 9–10.

11

competition.  Thus, the Court **DENIES** summary judgment as to Massimo's unfair competition claim (Count IV).

Massimo also alleges a cybersquatting violation against Shandong and Odes Cal. Related to the registration of AODES.COM.[55]  Massimo alleges that Shandong and/or Odes Cal. Violated 15 U.S.C. 1125(d) in that Shandong and/or Odes Cal. Has demonstrated a bad faith intent to profit from the Odes Marks and has registered and used a domain name that is identical or confusingly similar to the Odes Marks.

For a cybersquatting claim under 15 U.S.C. § 1125(d), a person can be liable in a civil action by the *owner* of a mark.  Because there is a fact dispute regarding who owns the Odes Marks, there is also a fact dispute here—ownership of the Odes Marks must first be determined in order to determine whether Shandong/Odes Cal. has violated 15 U.S.C. 1125(d) through its AODES.COM registration.  Thus, the Court **DENIES** summary judgment as to Massimo's cybersquatting claim for AODES.COM (Count V).

### B. Count VI: Breach of Contract (EDA)

Massimo and Shandong entered into the EDA for the distribution of 800cc-1000cc UTV/ATVs and air-conditioned UTVs within the United States.  Massimo alleges that Shandong breached the EDA by (1) selling 800cc-1000cc UTV/ATV and air-conditioned UTV products to parties other than Massimo in violation of the

---

[55] Massimo had previously brought a cybersquatting violation claim related to the registration of ODESINDUSTRY.COM.  In its summary judgment briefing, Massimo explained that it did not oppose summary judgment to the extent the claim related to ODESINDUSTRY.COM.  Then, in its second amended complaint, the operative complaint, Massimo dropped this claim for the registration of ODESINDUSTRY.COM.  That amended pleading moots any Massimo claim for cybersquatting relating to ODESINDUSTRY.COM.

exclusivity requirement and (2) withholding the products Massimo paid for under the EDA.[56]  Shandong brought a counterclaim alleging that Massimo breached the EDA by (1) using Shandong's confidential information to counterfeit Shandong's products and (2) by using the Odes Marks after the EDA terminated.[57]  Shandong moved for summary judgment as to Massimo's breach of contract claim while Massimo moved for summary judgment on Shandong's breach of contract counterclaim.  Both parties failed to establish the absence of a genuine dispute of material fact regarding both Massimo's claim and Shandong's counterclaim thereby precluding summary judgment.

"[T]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[58]  "A breach occurs when a party fails to perform a duty required by the contract."[59]  Here, there are multiple fact disputes precluding summary judgment concerning whether either party breached the EDA.  Specifically, there are fact disputes regarding whether Massimo paid $300,000 to Shandong for products under the EDA, and if so, whether Shandong withheld those products.  Massimo points to evidence suggesting that it did pay for, but did not receive, these products, while Shandong cites to evidence indicating Massimo did not pay for the products it claims

---

[56] Doc. 184 at 47–48.

[57] Doc. 98 at 39–40.

[58] *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (cleaned up).

[59] *Id.*

it did.[60]  The parties also dispute whether Shandong sold 800cc-1000cc UTV/ATV and air-conditioned UTV products to anyone other than Massimo and each party cites to evidence in support of its respective position.[61]  Likewise, concerning Shandong's breach of contract counterclaim against Massimo, there is a fact dispute regarding whether Massimo improperly transmitted Shandong's confidential information to third parties.[62]  Therefore, because there are multiple factual disputes surrounding whether there was a breach, and neither party has pointed to evidence demonstrating the absence of a genuine dispute, the Court **DENIES** summary judgment as to both Massimo's breach of contract (EDA) (Count VI) claim and as to Shandong's breach of contract counterclaim.

### C.    Counts VII, VIII, and XII: Tortious Interference with Contractual Relations, Breach of Contract, and Breach of the Duty of Loyalty

Massimo brought a breach of contract claim and a breach of the duty of loyalty claim against Threet for his alleged breaches of the non-compete provision and the confidentiality provision of his employment agreement with Massimo.  And Massimo brought a tortious interference claim against the Entity Defendants.  Threet moved for summary judgment on the breach of contract and breach of the duty of loyalty claims, and Odes Cal. moved for summary judgment on the tortious interference claim.  The Court concludes that there are fact disputes precluding summary judgment as these claims.

---

[60] Doc. 194 at 39; Doc. 228 at 25.

[61] Doc. 165 at 43; Doc. 194 at 39–40.

[62] Doc. 155 at 42–44; Doc. 208 at 37–39.

14

As an initial matter, Threet contends that Massimo cannot enforce the employment agreement because the parties to the agreement were "Nathan Threet" and "Massimo Motor LLC," not "Massimo Motor Sports LLC," the plaintiff here.  In Texas, to determine whether a misnomer in a contract renders it unenforceable, courts look at (1) whether the parties were misled by the mistake, (2) the party's identity is apparent despite the mistake, and (3) the parties intended the misnamed party to be the contracting party.[63]  Here, the parties intended Massimo to be the contracting party.  First, "Massimo Motor LLC" is not an affiliate of Massimo, as Threet acknowledges.[64]  Second, Threet knew that he was employed by Massimo.[65]  And finally, Massimo's identity is clear despite the mistake—the absence of "Motor Sports" from Massimo's name does not create confusion, especially considering "Massimo Motor LLC" is not an affiliate of Massimo and Threet's knowledge that he was employed by Massimo.  Thus, the Court concludes that the misnomer does not make the employment agreement unenforceable.

Next, Threet argues that he did not sign the non-compete provision, and in the alternative, the non-compete provision is overbroad.  Non-compete covenants in employment agreements are enforceable if they are "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be

---

[63] *See AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 329–30 (Tex. App.—Dallas 2014, pet. denied).

[64] *See* Doc. 160 at 34 n. 14.

[65] *See* Doc. 173-6 ("I worked at Massimo Motor Sports LLC from approximately June 1, 2020 until October 3, 2021.")

restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer."[66]   Here, the non-compete covenant's enforcement is limited to actions occurring in the state of Texas, within two years of termination of employment, and to activities only "substantially similar to or competitive with" Massimo.[67]   The non-compete provision thus appears to be reasonably limited by time, geographical area, and scope of activity.[68]

But the parties next dispute whether Threet signed the non-compete.[69]   Each party cites to summary judgment evidence supporting its position.   If Threet did in fact sign the agreement, the parties also dispute whether he breached the non-compete, each citing evidence in support of their arguments.[70]   Likewise, Threet fails to establish the absence of a genuine dispute of material fact concerning whether he breached the non-disclosure provision of his employment agreement with Massimo. Threet contends that there is no record evidence that Threet disclosed or failed to return any confidential information, but Massimo cites to evidence indicating that Threet misused confidential information about Massimo's business, management, and operations.[71]

---

[66] *Salas v. Chris Christensen Sys., Inc.*, No. 10-11-00107-CV, 2011 WL 4089999, at *18 (Tex. App.—Waco Sept. 14, 2011, no pet).

[67] Doc. No. 29-3 at 147.

[68] *Salas*, 2011 WL 4089999, at *18.

[69] *See* Doc. 160 at 29–30; *see also* Doc. 192 at 18–21.

[70] *See* Doc. 160 at 34; *see also* Doc. 192 at 22–25.

[71] *See* Doc. 160 at 37; *see also* Doc. 192 at 26–29.

Because there are multiple fact disputes concerning whether (1) Threet signed the non-compete provision, (2) Threet breached the non-compete provision, and (3) Threet breached the non-disclosure provision, the Court **DENIES** summary judgment as to Massimo's breach of contract claim against Threet.

Likewise, Odes Cal. moved for summary judgment on the tortious interference claim because it contends that Threet did not have a valid contract with Massimo with an enforceable covenant not to compete.[72]  For the reasons discussed above, there is a fact dispute regarding whether Threet signed the employment agreement containing the non-compete provision.  Thus, there is also a fact dispute precluding summary judgment on the tortious interference claim as well, and the Court therefore **DENIES** summary judgment as to this claim.

Now turning to Massimo's breach of the duty of loyalty claim.  Texas law recognizes that an employee owes an employer fiduciary duties, which include a duty comparable to what Massimo alleges as a duty of loyalty, *i.e.*, not to disclose employer's confidential information and not to compete with your employer while employed by the employer.[73]  "To succeed on a claim of breach of fiduciary duty, the plaintiff must show that a fiduciary relationship existed between the plaintiff and defendant, that the defendant breached his fiduciary duty, and that the defendant's breach caused injury to the plaintiff or a benefit to the defendant."[74]  Here, similar to

---

[72] Doc. 172 at 18–19.

[73] *See McGowan & Co., Inc. v. Bogan*, 93 F. Supp. 3d 624, 652 (S.D. Tex. 2015).

[74] *Meaux Surface Prot., Inc. v. Fogleman,* 607 F.3d 161, 169 (5th Cir. 2010).

the discussion concerning Massimo's breach of contract claim, there are numerous fact disputes precluding summary judgment. First, Threet's argument concerning whether the Texas Uniform Trade Secrets Act preempts this claim is predicated on his argument that there was no contract between himself and Massimo. But, as discussed above, the Court rejects his argument that the contract's misnomer makes his employment agreement unenforceable and in fact, Threet admits that he was employed by, and signed an employment agreement with, Massimo.[75] Thus, the Court cannot assume here that there was no contract between the parties. Moreover, Threet fails to establish the absence of a dispute of material fact concerning whether he breached his fiduciary duty to Massimo and that breach caused injury to Massimo or benefitted the defendants. Massimo has presented record evidence supporting its position that Threet misused confidential information about Massimo's business, management, and operations, poached Massimo's clients, and worked for competitors while employed by Massimo.[76] Thus, the Court **DENIES** summary judgment as to Massimo's breach of the duty of loyalty claim against Threet.

### D. Counts IX and X: Trade Secret Misappropriation

Massimo also brought claims against Threet and the Entity Defendants for trade secret misappropriation. "To succeed on the merits of [a] misappropriation of trade secrets claim, [a plaintiff] must show that (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or

---

[75] *See* Doc. 160 at 16.

[76] *See* Doc. 160 at 22, 37; *see also* Doc. 192 at 26–29.

discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff."[77]  The defendants contend that Massimo's alleged trade secrets are too generalized to constitute trade secrets, that Massimo failed to take reasonable efforts to keep them secret, and that Massimo has no evidence that the defendants ever used or disclosed confidential information.  But none of their arguments prove the absence of a dispute of material fact for summary judgment on these claims.

First, Massimo, in response to the defendants' arguments that its alleged trade secrets were too generalized, pointed to record evidence indicating that it has specifically identified its pricing information, customer and sales history, and projections as its trade secrets.[78]  This kind of information can be specific enough to constitute a trade secret.[79]  And the defendants have not identified record evidence proving the absence of a fact dispute.  Thus, whether Massimo's pricing information, customer and sales history, and projections are trade secrets is a fact dispute.  Next, whether Massimo took reasonable efforts to keep this information secret is also a fact dispute.  Massimo identifies record evidence showing that it gave access to this information to a limited number of people, required non-disclosure agreements, and demanded that former employees return or destroy this information before

---

[77] *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (cleaned up).

[78] *See* Doc. 192 at 31–34.

[79] *See Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 441 (S.D. Tex. 2008) ("Customer lists, pricing information, client information, customer preferences, buyer contacts, and marketing strategies have all been recognized as trade secrets.").

departing.[80]   Whether the steps Massimo took to keep its information secret were reasonable is a jury question.  Finally, the defendants contend that Massimo has no evidence that the defendants ever used or disclosed its confidential information.  But Massimo cites to record evidence supporting its claim that Threet acquired its confidential information, without Massimo's authorization, to assist Shandong in building its own distributorship.[81]   Thus, the defendants have not demonstrated the absence of a dispute of material fact regarding the use element of a trade secret misappropriation claim.  Because the defendants have not identified record evidence establishing the absence of a dispute of material fact as to any of the elements of Massimo's trade secret misappropriation claims, the Court **DENIES** summary judgment on these claims.[82]

### E. Exemplary Damages

Threet and the Entity Defendants also moved for summary judgment on the issue of exemplary damages.  Specifically, they contend that Massimo has no evidence that they had a specific intent to cause substantial injury or harm to Massimo.  In response, Massimo cites to record evidence indicating that Threet worked with the Entity Defendants, while employed by Massimo, to develop a competing

---

[80] *See* Doc. 192 at 34.

[81] *See id.* at 34–36.

[82] Massimo, in its response, discusses its experts' damages assessments related to these claims. The Court recognizes that there are motions to strike these expert reports pending on the docket. The Court will consider those motions in a separate order, but it need not make those determinations here for purposes of the summary judgment motions at issue in this order.

distributorship by using Massimo's confidential information, including its dealer network and sales projections.[83]

Exemplary damages are defined as "any damages awarded as a penalty or way of punishment but not for compensatory purposes."[84]  A plaintiff must show malice in order to obtain exemplary damages.[85]  Malice is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant."[86]  The Texas Supreme Court upheld findings of malice in cases where former employees funneled information to competitors, created a business plan predicated on stealing a large number of clients from their former company, and stole confidential documents and trade secrets from their former company.[87]  Based on Massimo's evidence, a reasonable jury could find Threet and the Entity Defendants acted with malice.  The defendants fail to show that there is no dispute of material fact on this issue.  Thus, the Court **DENIES** summary judgment on the question of exemplary damages.

## IV. Conclusion

In light of the discussion above, the Court **GRANTS IN PART** Threet's motion for summary judgment as to Counts XI and XIII (breach of the implied covenant of good faith and fair dealing and unjust enrichment) of Massimo's complaint, and

---

[83] *See* Doc. 192 at 40–41; *see* Doc. 196 at 20–22; *see* Doc. 200 at 15–16; *see* Doc. 202 at 13–14.

[84] Tex. Civ. Prac. & Rem. Code § 41.001(5).

[85] Tex. Civ. Prac. & Rem. Code. § 41.003(a)(2).

[86] Tex. Civ. Prac. & Rem. Code § 41.001.

[87] *See Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 151 (5th Cir. 2017) (citing *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 867–71 (Tex. 2017)).

otherwise **DENIES** Threet's motion.  (Doc. 159).  The Court also **DISMISSES WITH PREJUDICE** Defendant Odes USA Inc. (TX) from this action and **FINDS AS MOOT** its motion for summary judgment.  (Doc. 161).  Finally, the Court **DENIES** Massimo's motion for partial summary judgment (Doc. 154) and **DENIES** the Entity Defendants' motions for summary judgment (Docs. 156, 164, 167, 169, 171).

   **IT IS SO ORDERED** this 6th day of February, 2024.

       _____

       BRANTLEY STARR
       UNITED STATES DISTRICT JUDGE